

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. PD-0860-07

**DERESKEY LASHAWN HAYDEN, Appellant**

**v.**

**THE STATE OF TEXAS**

### ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE FIRST COURT OF APPEALS
### HARRIS COUNTY

KEASLER, J., delivered the opinion of the Court in which KELLER, P.J., MEYERS, WOMACK, JOHNSON, HERVEY, HOLCOMB, and COCHRAN, JJ., joined. PRICE, J., concurred.

## O P I N I O N

During the punishment phase of Dereskey Lashawn Hayden's trial, the judge excluded

evidence that the victim was a registered sex offender. The court of appeals held that the

judge did not abuse her discretion because the evidence encouraged jurors to measure the

victim's worth compared to other members of society.[1] We affirm the court of appeals's

---

[1] *Hayden v. State*, No. 01-06-00326-CR, 2007 Tex. App. LEXIS 3703, at *7 (Tex. App.—Houston [1st Dist.] May 10, 2007) (not designated for publication).

judgment and also hold that the evidence was inadmissible rebuttal evidence.

## Background

A community of homeless people lived under a freeway overpass called Pierce Elevated, a section of Interstate 45 that passes through downtown Houston. Early in the morning on May 27, 2005, Hayden, a homeless woman, confronted John Kimball, a homeless man, under the Pierce Elevated, where they both were staying. Hayden claimed that Kimball owed her money, and when he walked away without paying, Hayden stabbed him in the back with a knife. Kimball fell down; when he tried to get up, Hayden stabbed him a second time. Hayden was arrested and tried for murder.

During the guilt phase of trial, three homeless men, who were all staying under the Pierce Elevated on May 27th and witnessed the murder, testified. William Morgan was the first. Before asking Morgan to described what he witnessed, the State asked him if he knew Hayden. He responded that he did not "know [Hayden] personally" and "just saw her a few times." He then said that he awoke to Hayden arguing with a man on May 27th. He identified the man as Kimball and said that he "didn't really know him personally." The Prosecutor then asked: "What did you know about [Kimball]? Did you know where he was from?" Morgan responded: "I know that he be [sic] down there. When they come feed us, that is where he camped out at, and he was a pretty nice guy. He didn't give anybody any problems."

Anthony Armstrong testified next. He also said that he awoke to Hayden arguing with

Kimball on May 27th. He identified Hayden in the courtroom and said that he "knew her for about six or seven months, something like that." But he did not know Kimball very well because he was a new arrival to the community and was a "quiet man."

Finally, Learnardi Richardson testified. He also heard a woman arguing with a man on May 27th. He had seen both people before that night. He "didn't know [Kimball]" by name, but he did know Hayden. All three men testified that they heard Hayden demand money from Kimball and then saw her grab or stab him.

Kimball's daughter, Michelle Marshall, also testified. She explained that, while her father at one time raised a family, served in the state guard, and worked in a packaging plant in Minnesota, he had a problem with alcohol that became progressively worse over the years. He became homeless because he wanted to use his money for discretionary expenses, instead of housing expenses, and he moved to Houston about a month before his death to avoid spending the winters in Minnesota.

After the State rested, Hayden offered evidence, outside the jury's presence, that Kimball was a registered sex offender in Minnesota. She wanted to call Officer Martinez to testify about Kimball's status "as part of his investigation" and to rebut "the theory that the state is trying to show that this was a really good man." Hayden pointed to Morgan's testimony that Kimball was a "pretty nice guy" and Marshall's testimony generally. The trial judge excluded the evidence, and the jury convicted Hayden of murder.

During the punishment phase, Hayden reoffered the evidence that Kimball was a

registered sex offender. This time, counsel argued that "[t]he presumption still is that the complainant was a nice person, and we will [sic] like to show that he wasn't such a nice person, and we want to offer that for the jury's consideration." The trial judge declined again to admit the evidence. The jury sentenced Hayden to twenty years' confinement.

On appeal, Hayden contended, in her sole point of error, that the trial judge improperly excluded evidence that Kimball was a sex offender during the punishment phase.[2] Hayden argued that the evidence was admissible to rebut the false impression of Kimball's character created by the State during the guilt phase.[3] The First Court of Appeals in Houston held that the evidence was "negative victim impact evidence," which was inadmissible even to rebut any false impressions created by the State's evidence.[4]

We granted Hayden's petition for discretionary review to decide whether "the Court of Appeals err[ed] in upholding the exclusion of evidence to show that the victim was a convicted sex offender." We affirm the court of appeals's judgment that the trial judge did not abuse her discretion because the evidence was inadmissible victim character evidence. We also hold that the evidence was inadmissible rebuttal evidence.

## Law

In a non-capital felony trial, evidence is admissible during the punishment phase if

---

[2] *Id.* at *1.

[3] *Id.* at *5.

[4] *Id.* at *7.

"the court deems [it] relevant to sentencing."[5] The Legislature did not define the term "relevant" in the Code of Criminal Procedure, and beyond the few items enumerated in Article 37.07, it has not given any guidance as to what evidence is relevant to punishment.[6] Borrowing from the definition of "relevant" in Texas Rule of Evidence 401 is of little avail because the factfinder's role during the guilt phase is different from its role during the punishment phase.[7] Unlike the guilt phase, where the factfinder must decide discrete factual issues, deciding what punishment to impose is a "normative process, not intrinsically factbound."[8] Thus, what is "relevant" to assessing punishment is "a function of policy rather than relevancy."[9] Evidence is relevant if it helps the factfinder decide what sentence is appropriate for a particular defendant given the facts of the case.[10]

Victim character and victim impact evidence, both good and bad, are admissible during the punishment phase if the factfinder may rationally attribute the evidence to the accused's "personal responsibility and moral culpability."[11] But evidence that draws

---

[5] T EX. CODE CRIM. PROC. ANN. art. 37.07 § 3(a)(1) (Vernon 2006).

[6] *Murphy v. State*, 777 S.W.2d 44, 63 (Tex. Crim. App. 1989) (plurality opinion).

[7] *Sims v. State*, 273 S.W.3d 291, 295 (Tex. Crim. App. 2008).

[8] *Rogers v. State*, 991 S.W.2d 263, 265 (Tex. Crim. App. 1999) (citations omitted).

[9] *Id.*

[10] *Id.*

[11] *Salazar v. State*, 90 S.W.3d 330, 335 (Tex. Crim. App. 2002).

comparisons between the victim and other members of society based on the victim's worth or morality should usually be excluded under Rule 403.[12] This is true regardless of whether the evidence suggests that the victim was of greater or lesser worth than other members of society.[13] For example, although we did not decide whether the undisclosed evidence in *Clark v. State* was admissible, we stated in dicta that "we disagree with such so-called 'logic' in suggesting that the decedent's behavior indicated that she was not a particularly valuable member of the community and that her life might have had more value had she been of a different character."[14] In *Goff v. State*, we recognized again that a victim's comparative worth as a human being was not admissible during the punishment phase.[15] We held that evidence of the victim's homosexuality was inadmissible to show that the defendant did not deserve the death penalty because he killed a less valuable member of society.[16] The defendant did not know that the victim was a homosexual, and the evidence was not relevant to mitigating the defendant's sentence because it had no bearing on the defendant's

---

[12] *Mosley v. State*, 983 S.W.2d 249, 262 (Tex. Crim. App. 1998).

[13] *See id.* at 265; *Goff v. State*, 931 S.W.2d 537, 554 (Tex. Crim. App.1996); *Clark v. State*, 881 S.W.2d 682, 699 (Tex. Crim. App. 1994); *Richards v. State*, 932 S.W.2d 213, 216 (Tex. App.—El Paso 1996, pet. ref'd).

[14] *Clark*, 881 S.W.2d at 699.

[15] *Goff*, 931 S.W.2d at 556.

[16] *Id.*

background, character, or circumstances of the crime.[17]

Although we have acknowledged that there is no bright-line standard for determining when victim impact and character evidence is admissible,[18] we must respect the Legislature's express intent to leave such decisions within the trial judge's sound discretion.[19] And we will not disturb the ruling on appeal unless it falls outside the zone of reasonable disagreement.[20] We will also uphold the ruling on any theory applicable to the case.[21]

### Analysis

We affirm the court of appeals's determination that the trial judge did not abuse her discretion by excluding evidence that Kimball was a registered sex offender. We do, however, disapprove of the court of appeals characterizing this evidence as "negative victim impact evidence." In the past, we have occasionally referred to "victim impact evidence" as a broad category that includes both victim character evidence and victim impact evidence.[22] Regrettably, this imprecision has become entrenched in this state's jurisprudence. Victim

---

[17] *Id.* at 555-56.

[18] *Mosley*, 983 S.W.2d at 262.

[19] *See* TEX. CODE CRIM. PROC. ANN. art. 37.07 § 3(a)(1); *Ford v. State*, 919 S.W.2d 107, 115 (Tex. Crim. App. 1996).

[20] *Ford*, 919 S.W.2d at 115.

[21] *State v. Ross*, 32 S.W.3d 853, 855-56 (Tex. Crim. App. 2000).

[22] *E.g., Salazar*, 90 S.W.3d at 335.

"impact" evidence is evidence of the effect the victim's death has on other people.[23] Victim "character" evidence is evidence of the victim's general qualities.[24] Although both types of evidence are related and generally admissible during the punishment phase of trial,[25] evidence that Kimball was a registered sex offender is better classified as character evidence—as opposed to impact evidence[26]—because Hayden offered it to show that Kimball had bad qualities.

The trial judge did not abuse her discretion by excluding evidence that Kimball was a registered sex offender. As in *Goff*, where the evidence of the victim's homosexuality was not relevant to the defendant's sentence, Kimball's status as a registered sex offender was not relevant to Hayden's punishment. Kimball's status was not relevant to the circumstances of the crime because Hayden did not present any evidence showing that she was aware of Kimball's past. Kimball's character was also irrelevant to Hayden's background and character. The only relevance this evidence had was to mitigate Hayden's punishment by showing that Kimball's life was of little value. We have held that this kind of comparative evidence is unfairly prejudicial under Rule 403. Therefore, the trial judge acted within her discretion by excluding the evidence.

---

[23] *Mosley*, 983 S.W.2d at 261.

[24] *Id.*

[25] *Id.* at 262.

[26] *See Hayden*, 2007 Tex. App. LEXIS 3703, at *5.

But Hayden contends that she was not offering the evidence to show that she should receive a lighter sentence because she killed a less valuable member of society. Rather she offered the evidence to rebut the State's evidence that created a false impression of Kimball's character. Specifically, she claims that Morgan's and Marshall's testimony misled the jury into believing that Kimball was "a nice guy." She accuses the court of appeals of blindly following the lead of other cases where this alternative "rebuttal evidence rationale" was raised but not addressed.[27] We conclude that the court of appeals did reach her rebuttal claim but erred in assuming that comparative victim character evidence is always inadmissible even when offered in rebuttal. We nevertheless affirm the court of appeals's decision because the trial judge did not abuse her discretion by excluding the evidence in this case.

Evidence that is otherwise inadmissible may become admissible when a party opens the door to such evidence.[28] A party opens the door by leaving a false impression with the jury that invites the other side to respond.[29] But even if a party opens the door to rebuttal evidence, the trial judge still has the discretion to exclude the evidence under Rule 403.[30] Courts generally prohibit a party from using extrinsic evidence to impeach a witness on a

---

[27] *See e.g.*, *Richards*, 932 S.W.2d at 215-16.

[28] *See Renteria v. State*, 206 S.W.3d 689, 697-98 (Tex. Crim. App. 2006); *Griffin v. State*, 787 S.W.2d 63, 67 (Tex. Crim. App. 1990).

[29] *Daggett v. State*, 187 S.W.3d 444, 452 (Tex. Crim. App. 2005).

[30] *See Martinez v. State*, 17 S.W.3d 677, 687 (Tex. Crim. App. 2000); *Wheeler v. State*, 67 S.W.3d 879, 886 (Tex. Crim. App. 2002).

collateral issue.[31]  An issue is collateral if, beyond its impeachment value, a party would not "be entitled to prove it as a part of his case tending to establish his plea."[32]  Unless the witness's testimony created a false impression that is "directly relevant to the offense charged,"[33] allowing a party to delve into the issue beyond the limits of cross examination wastes time and confuses the issues.[34]

Hayden made no attempt to cross examine Morgan or Marshall concerning their statements about Kimball.  Rather, she waited until after both witnesses finished testifying and attempted to impeach their testimony through Officer Martinez.  Kimball's status as a sex offender was a collateral issue; it was not relevant to the jury's assessment of the appropriate sentence to impose on Hayden.  Allowing Hayden to impeach Morgan's and Marshall's testimony with the extrinsic evidence would waste time and confuse the issue by focusing the jury's attention on the victim's character rather than the defendant's personal responsibility and moral culpability.  Thus, it was within the trial judge's discretion to exclude the evidence under Rule 403.

## Conclusion

We hold that the trial judge's decision to exclude evidence that Kimball was a

---

[31] *See Daggett*, 187 S.W.3d at 454 n.24.

[32] *Bates v. State*, 587 S.W.2d 121, 141-42 (Tex. Crim. App. 1979) (opinion on reh'g) (internal quotations omitted).

[33] *Daggett*, 187 S.W.3d at 454 n.24.

[34] *Bates*, 587 S.W.2d at 142.

registered sex offender fell within the zone of reasonable disagreement. This evidence was inadmissible both as victim character and rebuttal evidence. Accordingly, we affirm the court of appeals's judgment.

DATE DELIVERED: April 8, 2009
PUBLISH