Opinion issued September 30, 2010



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-09-00216-CR

———————————

JAMES ROY DYE, Appellant

V.

THE STATE OF
TEXAS, Appellee



 



 

On Appeal from the 159th Judicial District Court

Angelina County, Texas[1]



Trial Court No. 27,834

 



 

MEMORANDUM OPINION

Appellant, James Roy Dye, appeals from a conviction for
aggravated sexual assault of a child, his 11 year old niece, referred to at
trial with the pseudonym Jane Doe Number One (hereafter called “Jane”).[2]  See
Tex. Penal Code Ann. § 22.021 (Vernon Supp. 2009).  He pleaded not guilty to the offense.  A
jury found him guilty and sentenced him to 45 years in prison.  In four issues, appellant contends that the
evidence is legally and factually insufficient to establish his guilt, the
trial court erred by admitting into evidence inadmissible hearsay from the sexual
assault nurse examiner (SANE) and by admitting extraneous offense evidence.  We conclude that the evidence is legally and
factually sufficient, that appellant failed to preserve error for his
evidentiary complaint concerning the nurse examiner’s testimony, and that the
trial court properly excluded the extraneous evidence that would have impeached
appellant’s testimony.  We affirm.

Background

          Jane lived with a variety of people,
including appellant, and in many places while she was 11 years old.  The first time appellant acted in a manner
that made Jane feel uncomfortable, he provided her with two alcoholic
beverages, and he stuck his hands in her pants and started rubbing her buttocks.  That incident was not charged in either count
of the indictment.  The second incident, which
was the first count in the indictment, occurred later, around September 2007, at
Jane’s grandmother’s house.  At the time,
Jane’s family members, including her mother, stepfather, sister, and brother,
were living at the house.  Other family
members were also living at the house.

That night, Jane and her cousin were trying to fall asleep on
a mattress in one of the bedrooms.  Appellant
was also in the room lying on the mattress with the girls.  Jane stated that appellant rubbed her buttocks,
got on top of her, and stuck his male genital organ inside her.  He then asked Jane if it felt good, as he
moved back and forth.  During this time, Jane’s
cousin was still in the bed.

Later, Jane’s aunt came to check on Jane and her cousin.  Jane’s aunt was Jane’s cousin’s mother.  The aunt testified that when she went to
check on her daughter, the door was shut and the lights were off.  When she walked into the bedroom, she saw
appellant flipping or rolling over on the bed. 
She left the room after this, but she had an uneasy feeling, so she made
her daughter leave the room to sleep elsewhere. 
The aunt also testified that appellant wore only a pair of boxers when
he left the girls’ bedroom.  

After the incident, Jane told two cousins about the incident
with appellant.  One of them told a counselor,
who informed Child Protective Services (CPS). 
A woman from CPS came to speak to Jane at school, and Jane told her that
nothing happened with appellant.  When Jane
arrived home from school, she also told her family that nothing had happened.  Later, Jane spoke with appellant’s girlfriend.  Appellant and his girlfriend had a child
together and were in an intermittent relationship for about two years.  When she found out about the assault, appellant’s
girlfriend spoke to Jane, and Jane told her that appellant “put his thing in
me” and “kissed me.”  After speaking with
the girlfriend, Jane admitted to her family that the assault had occurred.  Appellant denied any of the sexual contact
alleged by Jane.

Jane went to see a SANE nurse approximately six weeks after
the alleged assault occurred.  The nurse
testified that she did not find any trauma on Jane’s body.  She also testified that Jane got sick to her
stomach and sweaty during the exam.

At trial, appellant testified that
the reason he and his girlfriend had previously broken up was because of
arguments about his wife and financial difficulties.  He also testified that his brother said that “he
believes [appellant’s girlfriend was] looking for a way out because she don’t
want to be here.”  Accordingly, one of
appellant’s defensive theories was that his girlfriend told Jane to make up the
story so that she would have an excuse to get out of the relationship.  To impeach this theory, the State asked the trial court to allow it to introduce evidence
that appellant and his girlfriend broke up because he was caught exposing his
genitals and masturbating at a tanning salon. 
Appellant, however, sought to exclude the evidence, as well as other extraneous
offenses, through a motion in limine.  The trial court ruled that the State could ask appellant about
whether the salon incident was the reason for the break up, and that the State
could not go further than that.  During cross-examination
of appellant, the State asked him about the salon incident and he denied having
committed it.  The trial court refused to
allow that State to introduce any further evidence on that matter and no
evidence showing that the salon incident occurred was introduced.

Sufficiency of Evidence for
Aggravated Sexual Assault

          Appellant challenges the legal and
factual sufficiency of the evidence to prove his guilt for the offense of
aggravated sexual assault of a child on the same grounds, that Jane lacks
credibility and other evidence to establish is guilt is lacking.

A.  
 Elements of Aggravated Sexual Assault

A person commits aggravated sexual assault when he
intentionally or knowingly causes the penetration, by any means, of the anus or
sexual organ of a child younger than 14 years of age.  See
Tex. Penal Code Ann. § 22.021(a)(1)(B)(i), (a)(2)(B) (Vernon
Supp. 2009).

B.  
Legal Sufficiency

In his second issue, appellant contends the evidence is
legally insufficient to establish aggravated sexual assault of a child.  In a legal sufficiency review, we consider
the entire trial record to determine whether, viewing the evidence in the light
most favorable to the verdict, a rational jury could have found the accused
guilty of all essential elements of the offense beyond a reasonable doubt.  See Jackson v. Virginia, 443 U.S.
307, 319, 99 S. Ct. 2781, 2789 (1979); Vodochodsky v. State,
158 S.W.3d 502, 509 (Tex. Crim. App. 2005). 
The jurors are the exclusive judges of the facts, the credibility of the
witnesses, and the weight given to testimony. 
Margraves v. State, 34 S.W.3d 912, 919 (Tex. Crim. App.
2000).  A jury is entitled to accept one
version of the facts and reject another and to reject any part of a witness’s
testimony.  See id.  

Jane testified that appellant penetrated her female sexual
organ.  Her testimony alone is sufficient
to establish each of the elements of the offense, and we defer to the jury’s
determination of her credibility.  See id. 
Viewed in the light most favorable to the verdict, the evidence shows
that a jury could reasonably have found the essential elements of the
aggravated sexual assault of a child beyond a reasonable doubt, and therefore,
we hold that the evidence is legally sufficient to sustain appellant’s conviction.   See
Vodochodsky, 158
S.W.3d at 509; Bargas v. State, 252
S.W.3d 876, 887–889 (Tex. App.—Houston [14th Dist.] 2008, no pet.) (evidence
was legally and factually sufficient even though there was no physical evidence
and victim’s story was not corroborated by other witnesses).

We overrule appellant’s second issue.

C. Factual Sufficiency

Appellant’s first issue challenges the factual sufficiency of
the evidence.  In a factual sufficiency
review, we view all of the evidence in a neutral light.  See
Ladd v. State, 3 S.W.3d 547, 557 (Tex. Crim. App. 1999).  We will set the verdict aside only if (1) the
evidence is so weak that the verdict is clearly wrong and manifestly unjust or
(2) the verdict is against the great weight and preponderance of the
evidence.  See Johnson v. State, 23
S.W.3d 1, 11 (Tex. Crim. App. 2000). 

Under the first prong of Johnson,
we cannot conclude that a conviction is “clearly wrong” or “manifestly unjust”
simply because, on the quantum of evidence admitted, we would have voted to
acquit had we been on the jury.  Watson v. State, 204 S.W.3d 404, 417
(Tex. Crim. App. 2006).  Under the second
prong of Johnson, we cannot declare
that a conflict in the evidence justifies a new trial simply because we
disagree with the jury’s resolution of that conflict.  Id.  Before finding that evidence is factually
insufficient to support a verdict under the second prong of Johnson, we must be able to say, with
some objective basis in the record, that the great weight and preponderance of
the evidence contradicts the jury’s verdict. 
Id.  In conducting a factual sufficiency review, we
must also discuss the evidence that, according to the appellant, most
undermines the jury’s verdict.  See Sims v. State, 99 S.W.3d 600, 603
(Tex. Crim. App. 2003).

          In reviewing the factual sufficiency
of the evidence, appellate courts should afford almost complete deference to a
jury’s decision when that decision is based upon an evaluation of
credibility.  Lancon v. State, 253 S.W.3d 699, 705 (Tex. Crim. App. 2008).  The jury is in the best position to judge the
credibility of a witness because it is present to hear the testimony; in
contrast, an appellate court must rely on a cold record.  Id.  The jury may choose to believe some testimony
and disbelieve other testimony.  Id. at 707.

Appellant contends the evidence is factually insufficient
based upon his assertions that Jane’s testimony lacks credibility, that the
other witnesses’ testimony is inconsistent, and that physical evidence is
absent.  He points out that, when CPS
interviewed Jane about the assault, she denied being assaulted.  Additionally, when Jane’s family first questioned
her, she told them that the assault did not happen.  Although the record shows that she initially
denied the allegations against appellant, the record further reflects that Jane
testified at trial that appellant sexually assaulted her.  This testimony was consistent with the
statements made by appellant’s girlfriend, whom Jane cried-out to after she had
denied the assault.  Appellant
essentially asks that we conclude that Jane is not credible, even though the jury
found her credible.  Appellate courts
should afford almost complete deference to a jury’s decision when that decision
is based upon an evaluation of credibility. 
Lancon, 253 S.W.3d at
705.  The jurors were entitled to believe
or disbelieve Jane’s testimony and to give it the weight and credibility that
they felt it deserved.  See id. at 707.

Moreover, other evidence supports Jane’s claims about
appellant.  The record shows that Jane’s
aunt saw appellant flipping or rolling over on the bed when she walked in to
check on the girls.  She got an uneasy
feeling after checking on the girls, and she made her daughter leave the bedroom.  Additionally, the aunt also testified that
when appellant came out of the bedroom, he wore only a pair of boxers.  In court, Jane’s cousin, who was in the bed
with Jane and appellant, testified that she did not know what the appellant and
Jane were doing, but that there was a bunch of movement.  While there is no eye-witness testimony of
the assault by anyone other than Jane, there is evidence presented by other
family members in the house consistent with Jane’s testimony.  

Appellant also contends that the jury failed to adequately
evaluate the credibility of the witnesses and should have resolved the
credibility issues in his favor.  Appellant
notes the conflicts he had at the time with his girlfriend and his wife.  He appears to contend that because he fought
with his girlfriend and was going through a divorce from his wife, they may have
been more apt to testify against him in an untruthful manner.  However, at the time of the assault, appellant
and his girlfriend were still dating, and she initially believed that Jane’s stepfather
had committed the assault instead of appellant. 
The record shows, therefore, that appellant’s girlfriend was initially
neutral regarding who committed the assault. 
Furthermore, although appellant’s wife appeared to dislike his
girlfriend, she maintained a close connection with appellant while he was in
jail, visiting him approximately thirty-two times.  This weighs against the assertion that she
would falsely testify against him. 
Appellant also failed to cite any testimony made by his wife which would
have caused the jury to resolve credibility issues against him.  The jurors were entitled to believe or
disbelieve appellant’s girlfriend and wife’s testimony and to give it the
weight and credibility that they felt it deserved.  See id.
at 705.

Appellant also contends that the absence of medical findings
makes the evidence insufficient.  However,
there is no requirement that a victim’s testimony of sexual assault be
corroborated by medical testimony or other physical evidence.  See
Jensen v. State, 66 S.W.3d 528, 534 (Tex. App.—Houston [14th Dist.] 2002,
pet. ref’d) (stating that testimony alone of child complainant sufficient to
support conviction for sexual assault). 
Moreover, although the record shows that no physical evidence of sexual
assault was discovered and that Jane’s hymen did not have any trauma, the SANE
nurse also explained that she would not always expect to see trauma when the
sexual assault had occurred over four or five weeks earlier, as here.  She also testified that it is possible for
trauma to have healed, and the fact that she did not find any physical trauma,
does not mean that there was not a sexual assault.

Giving due deference to the jury’s weighing of the evidence,
a neutral examination of the evidence shows the evidence is not so weak that
the jury’s finding appellant guilty of aggravated sexual assault of a child is
clearly wrong or manifestly unjust, and the determination of guilt is not
against the great weight and preponderance of the evidence.  See
Johnson, 23 S.W.3d at 11. We hold that
the evidence is factually sufficient to prove appellant’s guilt for aggravated
sexual assault of a child.  See Bargas, 252 S.W.3d at 887–89.

We overrule appellant’s first issue.

The Medical Evidence 

          In
appellant’s third issue, he contends that the trial court erred in admitting
inadmissible hearsay from the SANE nurse. 
Appellant, however, never objected to the medical evidence, making it
unpreserved for review.  

Rule 33.1
of the Rules of Appellate Procedure requires that a party state “the grounds
for the ruling that the complaining party sought from the trial court with
sufficient specificity to make the trial court aware of the complaint, unless
the specific grounds were apparent from the context.”  Tex.
R. App. P. 33.1(a)(1)(A).  Appellant’s
point of error on appeal must comport with his objection at trial.  See Guevara v. State, 97 S.W.3d 579,
583 (Tex. Crim. App. 2003).  Generally, a
party’s failure to timely and specifically object at the trial-court level
waives error.  Tex. R. App. P. 33.1; Blue v. State, 41 S.W.3d 129,
131 (Tex. Crim. App. 2000).  In making
objections, there are no technical considerations or form of words to be used;
straightforward communication in plain English will always suffice.  Ex parte Little, 887 S.W2d 62, 65 (Tex.
Crim. App. 1994).  An objection may be
phrased in any manner that sufficiently apprises the trial court and opposing
counsel of the nature of the complaint.  Id.
 

Appellant submitted a motion in
limine that included the alleged hearsay he complained about.  But a motion in limine does not preserve
error.  Thierry v. State, 288 S.W.3d 80, 87
(Tex. App.—Houston [1st Dist.] 2009, pet. ref’d ) (citing Harnett v. State, 38 S.W.3d 650, 655 (Tex. App.—Austin 2000, pet.
ref’d)). 
A ruling on a motion in limine
is not a ruling on the merits but
one which regulates the administration of a trial.  Id.  Because appellant’s attorney failed to object
at trial to the testimony made by the SANE nurse or to the admission of State’s
Exhibit 1, the medical records, we hold appellant did not preserve error.  See
Tex. R. App. P. 33.1; see also Blue,
41 S.W.3d at 131.

We overrule appellant’s third issue.

Extraneous Offense

          In his
fourth issue, appellant contends that the trial court erred in admitting
extraneous offense evidence during the guilt-innocence phase of trial.  He contends that he did not open the door for
the admission of the extraneous offense through questioning of appellant, and
the questioning by the State is not relevant to the testimony offered and was
so inherently prejudicial that its potential to improperly inflame the jury far
outweighed its relevance under Rule 403. 
However, at trial, appellant did not object to the questioning on the
grounds that it was unfairly prejudicial. 
See Tex. R. Evid. 403. 
Accordingly, appellant failed to preserve the error as to Rule 403 and
may not raise that objection for the first time on appeal.  See
Tex. R. App. P. 33.1; Blue, 41 S.W.3d at 131.

          Additionally,
it is important to note that the State did not introduce any evidence that
appellant committed any offense at the salon. 
At most, the State questioned him about whether that incident occurred,
and he denied that it occurred.  No
evidence was admitted to show that he committed any impropriety at the salon.

          Evidence
that is otherwise inadmissible may become admissible when a party opens the
door to such evidence.  Hayden v. State, 2009 WL 928569, *4
(Tex. Crim. App. 2009).  A party opens
the door by leaving a false impression with the jury that invites the other
side to respond.  Id.  Courts generally
prohibit a party from using extrinsic evidence to impeach a witness on a
collateral issue.  Id.  An issue is collateral
if, beyond its impeachment value, a party would not “be entitled to prove it as
a part of his case tending to establish his plea.”  Id.  “Unless the witness’s testimony created a
false impression that is ‘directly relevant to the offense charged,’ allowing a
party to delve into the issue beyond the limits of cross examination wastes
time and confuses the issues.”  Id. 

          The
trial court did not abuse its discretion by allowing the State to inquire about
the reasons for appellant’s break up with his girlfriend because appellant’s
testimony during direct examination left a false impression that his girlfriend
was prompting Jane to fabricate the claims against him so that his girlfriend
would have a reason to break up with him. 
See id.  It was proper, therefore, for the court to
allow the State to cross-examine appellant on the same matter by questioning
him as to whether the break up occurred due to his conduct that occurred at a
tanning salon.  See id.  After appellant
denied that any misconduct occurred at the tanning salon, the trial court
properly refused to allow the State to introduce any evidence to show that
appellant did commit the salon incident. 
See id.  The jury, therefore, was left only with
appellant’s denial that the incident occurred. 
We cannot conclude that the trial court erred by allowing
cross-examination on whether the salon incident occurred where the jury was
left only with evidence that the incident did not occur.

          But
even if the trial court erred by allowing the question about the salon
incident, appellant cannot show how he was harmed by the question.  The erroneous admission of evidence is
subject to a harm analysis under Rule 44.2(b) of the Texas Rules of Appellate
Procedure.  Jabari v. State, 273 S.W.3d 745, 754 (Tex. App.—Houston [1st Dist.] 2008, no pet.).  Under that
analysis, we disregard any non-constitutional error that does not affect
substantial rights.  Tex.
R. App. P. 44.2(b); Jabari,
273 S.W.3d at 754.  A substantial right
is affected when the error had a substantial and injurious effect or influence
in determining the jury’s verdict.  Morales v. State, 32 S.W.3d 862, 867 (Tex.
Crim. App. 2000).  Appellate courts
should not overturn a criminal conviction for non-constitutional error if the
court, after examining the record as a whole, has fair assurance that the error
did not influence the jury or had only a slight effect.  See id.  Here, appellant denied the incident, and the
record contains no evidence showing that the incident occurred.  Considering the entire record and appellant’s
denial that any of the conduct at the tanning salon occurred, we cannot
conclude that the asking of the questions themselves had a substantial and
injurious effect or influence in determining the jury’s verdict.  See Morales,
32 S.W.3d 862, 867 (Tex. Crim. App. 2000).

          We
overrule appellant’s fourth issue.




 

Conclusion

We affirm the judgment of the trial court.

 

 

 

 

Elsa
Alcala

                                                                   Justice


 

Panel consists of Chief Justice Radack and Justices Jennings and Alcala.

 

Do not publish.  Tex. R. App. P. 47.2(b).











[1]           This case was transferred to the First
Court of Appeals by order of the Supreme Court of Texas.





[2]           Appellant was charged with count I,
aggravated sexual assault of a child, and count II, indecency with a
child.  However, he was only convicted of
count I, so the second count will not be discussed on appeal.