

# NUMBER 13-12-00373-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

**SYLVERIO CARRIZALES,**                                                    **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                                    **Appellee.**

### On appeal from the 28th District Court
### of Nueces County, Texas.

# MEMORANDUM OPINION

### Before Justices Rodriguez, Garza, and Perkes
### Memorandum Opinion by Justice Perkes

Appellant Sylverio Carrizales appeals his conviction of two first-degree felony counts of delivery of a controlled substance; namely, cocaine and heroin. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.112 (West, Westlaw through 2013 3d C.S.). Appellant pleaded guilty to both counts, and a jury assessed punishment at thirty-years' confinement for each count, to be served in the Texas Department of Criminal Justice,

Institutional Division. The trial court ordered the sentences to run concurrently. By two issues, appellant argues on appeal: (1) he did not waive a jury trial on guilt/innocence; and (2) the trial court erroneously admitted a co-defendant's testimony regarding the sentence the co-defendant received for participating in the same offense. We affirm.

## I. BACKGROUND[1]

Appellant was arrested for his role in selling cocaine and heroin to an undercover agent of the Texas Department of Public Safety. The undercover agent, Steven West, negotiated to purchase the drugs from Phoungeune Xaypanya, a/k/a "Lisa." Appellant provided the drugs that Lisa sold to Agent West.

Appellant received written admonishments from the trial court before he pleaded guilty to two counts of delivery of a controlled substance. The admonishments included a section in which appellant indicated his understanding of the admonishments by placing his initials on the blanks beside each of the respective paragraphs in which they were explained. Appellant also signed his name on the last page of the admonishments. Further, the admonishments had a section outlining the rights that appellant was waiving by pleading guilty, and appellant signed at the bottom of the list. Appellant did not, however, initial the blanks provided beside each of the various rights.

The trial court accepted appellant's guilty plea, and, as per appellant's request, punishment was tried to a jury. In advance of the punishment hearing, appellant moved to exclude testimony of Lisa's sentence for her involvement in the drug transaction, but

---

[1] Because this is a memorandum opinion and the parties are familiar with the facts, we will not recite them here except as necessary to advise the parties of the Court's decision and the basic reasons for it. *See* TEX. R. APP. P. 47.4.

2

the trial court denied appellant's motion. Appellant re-urged the request immediately before the punishment hearing, and the trial court again denied it.

Lisa testified to her involvement in the offense. According to Lisa, she decided to testify because she wanted "[j]ust to tell the truth of what happened that day." She claimed that the State made no deals with her in exchange for her testimony. On cross-examination, defense counsel asked Lisa whether Agent West pressured her to say the drugs belonged to appellant or whether she informed appellant in a letter that Agent West was putting words in her mouth. In response to defense counsel's questions, the State asked the trial court for permission to introduce testimony of Lisa's sentence, arguing the defense opened the door to such testimony by challenging Lisa's credibility. The trial court denied the State's request.

During re-cross examination, Lisa affirmed that prior to this offense, she had no criminal record in Texas and no felony record. Defense counsel then asked Lisa about her decision to waive a jury trial, and the State again objected, contending that questions regarding her plea opened the door for its questions regarding her sentence. The trial court allowed defense counsel to continue the line of questioning but cautioned defense counsel to be "aware it may open up the door." Defense counsel then asked Lisa whether the appointed attorney who had represented her told her that he had, in the past, represented Devon Lerma, another person arrested in this case. The State objected, and the trial court again overruled the objection. Lisa testified that her attorney had informed her of the past representation. When defense counsel probed further, asking

when the attorney had so informed her, the State again objected, and the following exchange occurred between the trial court and defense counsel:

THE COURT: Where are you going? Are you making some accusation that certain things had not been done, or some improprieties?

[DEFENSE COUNSEL]: Judge, I wouldn't know that unless I am fully allowed to develop that. But just with this—

THE COURT: That tells me exactly what I just said. If you have got any information, we are getting into dangerous area. Attorney/client privilege information regarding representation, that is what it looks like to the Court. And then your response to the Court is, if I am allowed to develop it; that leaves a false impression in front of the jury that the State may ask the Court to go into.

During the subsequent re-direct examination, Lisa testified over defense counsel's objection to receiving a fifteen-year sentence.

## II. WAIVER OF JURY TRIAL

By his first issue, appellant contends the trial court erred in accepting his guilty plea without properly securing a jury-trial waiver. Specifically, appellant argues that because he did not initial the jury-trial-waiver paragraph in the trial court's written admonishments, he did not waive that right. Appellant does not claim his guilty plea was incorrect or involuntarily given.

## A. Applicable Law

United States and Texas law protect a criminal defendant's right to a trial by jury. U.S. CONST. amend. VI; TEX. CONST. art. 1, § 15; see TEX. CODE CRIM. PROC. ANN. art. 1.12 (West, Westlaw through 2013 3d C.S.). Subject to certain limitations, that right is

4

waivable, and, generally, a guilty plea waives the right to a jury trial. *Boykin v. Alabama*, 395 U.S. 238, 243 (1969); *Kniatt v. State*, 206 S.W.3d 657, 664 (Tex. Crim. App. 2006). Texas statutory law requires a jury-trial waiver to be in writing. *See* TEX. CODE CRIM. PROC. ANN. art. 1.13 (West, Westlaw through 2013 3d C.S.); *Johnson v. State*, 72 S.W.3d 346, 348 (Tex. Crim. App. 2002).

Appellant's argument turns entirely on the trial court's alleged non-conformity with article 1.13. Appellant does not contest the validity or voluntariness of his guilty plea. Accordingly, the alleged error is statutory, which we analyze for harm under Texas Rule of Appellate Procedure 44.2(b). *See Johnson*, 72 S.W.3d at 348. If the error "does not affect substantial rights," then it "must be disregarded." *Id.*; TEX. R. APP. P. 44.2(b). In assessing whether a trial court's non-conformity with article 1.13 affected substantial rights, we evaluate the record, and if it reflects the defendant's awareness of the jury-trial right, the non-conformity is harmless. *Johnson*, 72 S.W.3d at 349; *Jackson v. State*, 76 S.W.3d 798, 801 (Tex. App.—Corpus Christi 2002, no pet.).

**B.     Discussion**

Although appellant did not initial the jury-trial-waiver paragraph (or any paragraph in that section of the written admonishments) as invited as an additional measure of proof by the instructions atop the trial court's standard form, he nevertheless signed his name at the foot of the outlined waivers. This was enough to satisfy the writing requirement of article 1.13, which does not require the additional precaution that a defendant initial the waiver before subscribing to it. *See* TEX. CODE CRIM. PROC. ANN. art. 1.13(a).

Even assuming, however, appellant's signature alone was insufficient under article 1.13, we hold the error was harmless. Looking to the record, we note that before the trial court accepted the written plea, it orally admonished appellant, "Do you know by having signed these documents you have waived important rights, and one of those rights is to have a jury decide your case on guilt or innocence? Do you understand that?" Appellant responded, "Yes." Appellant now contends the foregoing colloquy merely inquired whether appellant had signed the documents, but a review of the conversation shows that to be incorrect; the trial court asked whether appellant understood the *impact* of signing, which, as the trial court explicitly noted to appellant, included a jury-trial waiver. Appellant's affirmation that he understood the signing waived his right to a jury trial shows appellant's awareness of the right. *See Johnson*, 72 S.W.3d at 349[2]; *Jackson*, 76 S.W.3d at 801. Moreover, this was not a plea-bargain case, and appellant requested and received a jury trial on punishment, which further indicates he was aware of the right. At the hearing on his motion for new trial, appellant's attorney explicitly acknowledged, "[M]y client elected to waive his right to a jury trial . . . ."

After evaluating the record, we conclude that it reflects appellant's awareness and intentional waiver of his right to a jury trial, and we hold that any alleged non-conformity

---

[2] Appellant attempts to distinguish *Johnson v. State*, 72 S.W.3d 346 (Tex. Crim. App. 2006), arguing the non-compliance with article 1.13 of the Texas Code of Criminal Procedure was harmless in that case only because the judgment stated the defendant waived a jury trial, whereas the judgment here does not. The *Johnson* Court did hold that the judgment in that case, which was uncontested by the appellant, reflected the appellant's awareness of the right, but the *Johnson* Court did not hold that a judgment recitation is the only acceptable record showing that an appellant is aware of the right. *See Johnson,* 72 S.W.3d at 348–49. Instead, the *Johnson* Court established a harm analysis whereby reviewing courts "ascertain whether [an appellant] understood his rights to a trial by jury before his bench trial began." *Id.* A judgment recitation is one of many ways a record may reflect awareness, and, like the *Johnson* Court, our goal is to assess whether appellant ever "alleged that he did not know about his right to a jury trial" and whether "the record indicate[s] that he did not." *Id.* at 349; *see Jackson v. State*, 76 S.W.3d 798, 801 (Tex. App.—Corpus Christi 2002, no pet.).

with article 1.13 by the trial court was harmless. See TEX. R. APP. P. 44.2(b); *Johnson*, 72 S.W.3d at 349; *Jackson*, 76 S.W.3d at 801. We overrule appellant's first issue.

### III. TESTIMONY OF CO-DEFENDANT'S SENTENCE

By his second issue, appellant asserts the trial court erred in allowing Lisa to testify regarding the sentence that she received because her sentence was not relevant.

### A. Standard of Review

We review a trial court's decision to admit or exclude evidence during the punishment phase for an abuse of discretion. *Mitchell v. State*, 931 S.W.2d 950, 953 (Tex. Crim. App. 1996) (en banc); *Crain v. State*, 373 S.W.3d 811, 815 (Tex. App.—Houston [14th Dist.] 2012, pet. ref'd). Under this standard, we uphold the trial court's ruling so long as it was within the zone of reasonable disagreement and correct under any theory of law applicable to the case. *Winegarner v. State*, 235 S.W.3d 787, 790 (Tex. Crim. App. 2007) (citations omitted).

Texas Code of Criminal Procedure article 37.07, section 3(a) governs the admissibility of evidence during the punishment phase of a non-capital trial. *See* TEX. CODE CRIM. PROC. ANN. art. 37.07, § 3(a) (West, Westlaw through 2013 3d C.S.); *Erazo v. State*, 144 S.W.3d 487, 491 (Tex. Crim. App. 2004). Under article 37.07 section 3(a), evidence may be offered on any matter the trial court deems relevant to sentencing. *See* TEX. CODE CRIM. PROC. ANN. art. 37.07, § 3(a). Relevant evidence is that which is helpful to the jury in determining the appropriate sentence in light of the facts of the case. *Hayden v. State*, 296 S.W.3d 549, 552 (Tex. Crim. App. 2009); *Erazo*, 144 S.W.3d at 491.

Evidence that is otherwise inadmissible may become admissible when a party opens the door to such evidence.  *Hayden*, 296 S.W.3d at 554 (citations omitted).  "A party opens the door by leaving a false impression with the jury that invites the other side to respond."  *Id.*; *see Daggett v. State*, 187 S.W.3d 444, 454 (Tex. Crim. App. 2005).

## B.     Discussion

Assuming without deciding that Lisa's sentence was irrelevant, we agree with the trial court that defense counsel left a false impression with the jury and thereby opened the door for the challenged testimony.  *See Hayden*, 296 S.W.3d at 554; *Daggett*, 187 S.W.3d at 454.   Although Lisa testified that she was in no position to receive a benefit from the State for testifying, defense counsel attempted to portray the opposite, asking whether Agent West pressured Lisa to blame appellant.

After the trial court twice advised defense counsel that additional inquiry may open the door, defense counsel asked Lisa why she, with no criminal record, decided to waive a jury trial.   Defense counsel also asked Lisa whether her appointed attorney told her that he previously represented co-defendant Lerma.   The State objected, and the trial court concluded that defense counsel left a false impression with the jury, opening the door for the State to ask questions about her sentence.

A conversation between the trial court and defense counsel took place outside the presence of the jury, and it highlights the trial court's concerns about the questions regarding Lisa's plea and attorney.   Defense counsel began the conversation by informing the court, "Judge, I will put everything on the table."   He then noted, "The jury obviously knows that this witness is in custody and serving time."   Defense counsel

8

proceeded to discuss the fact that Lisa waived a jury trial on the same day that she learned her attorney had represented codefendant Lerma in the past. The following exchange is relevant to defense counsel's strategy and the trial court's concern:

THE COURT: [I]f you are just a casual observer and you heard this, I would get the impression that you thought that the lawyer and client had not talked and somehow that this was a rush to judgment, an open plea, and that is what it sounds like.

[DEFENSE COUNSEL]: Yes, Your Honor.

THE COURT: If it is not, just say on the record that it is not what you are doing.

Well, silence is something golden.

[DEFENSE COUNSEL]: Judge, all I know is she made a conscious decision. Most clients are represented.

THE COURT: But what does that have to do with this punishment hearing? This is your client. I think what you want to show is that somehow you want to bootstrap yourself into the fact, if you can develop it, that this was a rushed open plea. She didn't have all the information and somehow your client and her are not getting a fair deal, and your client ought to get probation. I don't know, I'm just guessing. Well, I guess I guessed right.

[DEFENSE COUNSEL]: Well, for some reason she opted to go to the judge as opposed to a jury.

As the foregoing discussion reflects, the trial court worried defense counsel painted an imperfect picture of Lisa's conviction and, more importantly, incarceration; defense counsel sought probation for appellant, and the trial court thought counsel was trying to undermine Lisa's sentence of confinement by suggesting there were some improprieties

9

by her attorney, in her plea, or underlying the statement she gave to Agent West. The trial court's decision to allow Lisa's testimony did not fall outside the zone of reasonable disagreement; Lisa's sentence reflected no beneficial treatment by the State, and her testimony provided details of the sentence that defense counsel intimated was somehow inappropriate. We conclude the trial court did not abuse its discretion in allowing the State to perfect the picture. *See Hayden*, 296 S.W.3d at 554; *Daggett*, 187 S.W.3d at 454. We overrule appellant's second issue.

## IV. CONCLUSION

We affirm the trial court's judgment.

GREGORY T. PERKES
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
3rd day of April, 2014.

10