# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-24-00024-CR

**Luis Ernesto Araujo, Appellant**

**v.**

**The State of Texas, Appellee**

---

### FROM THE 26TH DISTRICT COURT OF WILLIAMSON COUNTY
### NO. 19-1735-K26, THE HONORABLE DONNA GAYLE KING, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

Appellant Luis Ernesto Araujo appeals from the trial court's judgment adjudicating him guilty of the third-degree felony offense of attempted indecency with a child by sexual contact as a lesser-included offense. *See* Tex. Penal Code §§ 15.01, 21.11(d); *see also* Tex. Code Crim. Proc. art. 37.09 (defining lesser-included offense). In two points of error, Araujo challenges the admission of extraneous-acts evidence and the fairness of the trial court's "ruling" adjudicating him guilty. For the following reasons, we affirm the trial court's judgment.

## BACKGROUND

In July 2019, Araujo was indicted for the second-degree felony offense of indecency with a child by sexual contact. In January 2022, as part of a plea agreement with the State, Araujo pleaded guilty and judicially confessed to the third-degree felony offense of attempted indecency with a child by sexual contact as a lesser-included offense. The trial court

accepted his plea, and in March 2022, the trial court signed an order of deferred adjudication consistent with the plea agreement and placed him on community supervision for five years with terms and conditions.

In August 2023, the State filed an original motion to adjudicate Araujo guilty of the third-degree felony offense of attempted indecency with a child by sexual contact based on alleged violations of the terms and conditions of his community supervision. The State alleged that he had failed to: (i) submit to a psychosexual evaluation by a licensed sex offender treatment provider as directed; (ii) "participate in internet monitoring of all internet-capable devices within [his] household, to wit: defendant failed to have his phone monitored"; (iii) "successfully complete an intensive outpatient treatment program as directed"; and (iv) attend recovery self-help group meetings as directed. In a first amended motion to adjudicate Araujo guilty, the State included the allegations from its original motion and two additional allegations—that Araujo violated the terms and conditions of his community supervision that required him to abstain from consuming alcohol and not to commit a criminal offense. The State alleged that on June 3, 2023, Araujo had consumed alcohol and operated a vehicle in a public place while intoxicated.

In December 2023, the trial court held a hearing on the State's first amended motion to adjudicate. Araujo pled not true to each allegation. The State's witnesses were officers involved in the traffic stop in June 2023 that resulted in Araujo's arrest for driving while intoxicated (DWI), the probation officer assigned to Araujo during his community supervision that is the subject of this appeal, and an officer who was involved in Araujo's 2019 conviction for felony DWI. The latter testified about his DWI investigation of Araujo in 2019 after Araujo was involved in a vehicle collision. Araujo admitted to the officer that he had consumed four or

2

five beers; the officer discovered from his investigation that Araujo had multiple prior DWI convictions; the officer saw "a lot of empty Bud Light beer cans on the passenger's side floorboard"; and based on field sobriety tests, the officer believed that Araujo was intoxicated.

The probation officer testified about the terms and conditions of Araujo's community supervision that Araujo had not completed. The officer testified that Araujo had failed to submit to a psychosexual evaluation or to participate in an intensive outpatient treatment program as directed, to attend recovery self-help meetings as directed, and to have his phone monitored. The probation officer also testified that "[t]here was a time when immigration did pick [Araujo] up, and he was being held" but that when Araujo returned to the area in September 2022, the officer resumed working with him as to outstanding terms and conditions of his community supervision. After Araujo's return, there was an administrative hearing with the officer's supervisor, "hoping to get him back on track to get these things completed." Araujo was given new deadlines to complete required programs. He made efforts to comply but was unsuccessful in doing so.

As to the June 2023 traffic stop that resulted in Araujo's arrest for DWI, the officer who initiated the traffic stop testified that: (i) based on her observations of Araujo, "he was impaired and shouldn't be driving"; (ii) based on her investigation, she learned that he had four prior DWI convictions; and (iii) she arrested him for DWI third or more. An officer who assisted with the traffic stop testified that Araujo's blood alcohol concentration was approximately three times the legal limit and that the officer saw "three or four beer cans" in Araujo's vehicle. The exhibits included the June 2023 forensic alcohol analytical report, which showed the analysis of Araujo's two breath specimens with the results of 0.236 and 0.233

alcohol concentrations, *see* Tex. Penal Code § 49.01(1) (defining "alcohol concentration"), (2) (defining "intoxicated"), and photographs of the beer cans in his vehicle.

Araujo's defense was that his life circumstances were the reason for his failure to comply with the terms and conditions of his community supervision, and if the trial court sentenced him, he sought the opportunity to continue to be on probation. The defense witnesses were Araujo and his son. Araujo admitted that he had multiple DWI convictions leading up to his DWI arrest in June 2023, including the 2019 felony DWI conviction. He testified that he pleaded guilty to that charge and was placed on five years' probation. He also admitted that he had not completed certain terms and conditions of his community supervision but provided excuses, testifying about marital, health, immigration, and financial problems that had impacted his ability to comply. He testified that he was placed on community supervision in this case in March 2022; that he was then in the process of divorce and had diabetes, and his income was reduced; that he was in the process of setting up required programs when he was taken into custody by immigration officials in May 2022; that he remained in their custody until September 2022; and that after he was released from custody, he was in the process of completing the required programs when he was arrested for his latest DWI in June 2023. He denied that he was intoxicated when he was arrested for this DWI or that he had alcohol issues or problems. Araujo's son testified that Araujo had a drinking problem but that he was a "good person" who "loves to help people as much as he can."

At the conclusion of the hearing, the trial court found the State's allegations against Araujo true, revoked his community supervision, found Araujo guilty of attempted indecency with a child by sexual contact as a lesser-included offense, and sentenced him to nine

years' confinement. *See* Tex. Penal Code §§ 15.01, 21.11(d). Following the hearing, the trial court signed the judgment adjudicating Araujo guilty. This appeal followed.

## ANALYSIS

In two points of error, Araujo argues that the trial court erred in overruling his objection to extraneous-acts evidence and that the trial court's adjudication of guilt was fundamentally unfair to him "when the court failed to take into consideration that the violations" of the terms and conditions of community supervision "were caused by occurrences beyond [his] control."

## Standard of Review

Appellate courts review a decision to adjudicate guilt in the same way that courts review a community-supervision revocation in which the adjudication of guilt was not deferred. *See* Tex. Code Crim. Proc. art. 42A.108(b); *Leonard v. State*, 385 S.W.3d 570, 572 n.1 (Tex. Crim. App. 2012) (explaining that adjudication hearing is governed by same rules as hearing to revoke community supervision and "is, in practical terms, a hearing on whether to revoke the defendant's deferred adjudication community supervision"). A trial court's decision to revoke community supervision is reviewed under an abuse-of-discretion standard of review. *Rickels v. State*, 202 S.W.3d 759, 763 (Tex. Crim. App. 2006).

An order that revokes community supervision must be supported by a preponderance of the evidence, *Cardona v. State*, 665 S.W.2d 492, 493 (Tex. Crim. App. 1984), and appellate courts review the evidence presented during the hearing in the light most favorable to the trial court's ruling, *Garrett v. State*, 619 S.W.2d 172, 174 (Tex. Crim. App. 1981). "When the State has failed to meet its burden of proof, the trial judge abuses his discretion in issuing an

5

order to revoke probation." *Cardona*, 665 S.W.2d at 493–94. But proof of the violation of a single condition of community supervision is sufficient to support revocation. *See Garcia v. State*, 387 S.W.3d 20, 26 (Tex. Crim. App. 2012) ("Proof of a single violation will support revocation."); *Atchison v. State*, 124 S.W.3d 755, 758–59 (Tex. App.—Austin 2003, pet. ref'd) (observing that any one of alleged violations "would support the decision to adjudicate" (citing *Moses v. State*, 590 S.W.2d 469, 470 (Tex. Crim. App. 1979))). Thus, "to prevail on appeal, the defendant must successfully challenge all of the findings that support the revocation order." *Silber v. State*, 371 S.W.3d 605, 611 (Tex. App.—Houston [1st Dist.] 2012, no pet.).

**Extraneous-Acts Evidence**

In his first point of error, Araujo argues that the trial court erred in overruling his objection to the evidence about his 2019 DWI conviction. Araujo objected to this evidence on relevancy grounds because it occurred several years before Araujo was placed on deferred adjudication in this case. *See* Tex. R. Evid. 401 (providing test for determining relevance of evidence).

We review a trial court's decision to admit evidence for an abuse of discretion. *Henley v. State*, 493 S.W.3d 77, 82–83 (Tex. Crim. App. 2016). An abuse of discretion does not occur unless the trial court acts "arbitrarily or unreasonably" or "without reference to any guiding rules and principles." *State v. Hill*, 499 S.W.3d 853, 865 (Tex. Crim. App. 2016) (quoting *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990)). We may not reverse the trial court's ruling unless the "decision falls outside the zone of reasonable disagreement." *Johnson v. State*, 490 S.W.3d 895, 908 (Tex. Crim. App. 2016). An evidentiary

ruling will be upheld if it is correct on any theory of law applicable to the case. *Henley*, 493 S.W.3d at 93 (citing *De La Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009)).

Araujo argues that the evidence about Araujo's 2019 DWI conviction was not relevant because the issue before the trial court was whether Araujo had violated the terms and conditions of his community supervision in this case. The trial court, however, reasonably determined that this evidence was relevant to punishment. *See Hayden v. State*, 296 S.W.3d 549, 552 (Tex. Crim. App. 2009) (stating that evidence is relevant to assessing punishment "if it helps the factfinder decide what sentence is appropriate for a particular defendant given the facts of the case"); *Sims v. State*, 273 S.W.3d 291, 296 (Tex. Crim. App. 2008) (explaining that "[s]pecific misconduct evidence is expressly made admissible at the punishment phase of trial 'notwithstanding rules 404 and 405, Texas Rules of Evidence'" (quoting Tex. Code Crim. Proc. art. 37.07, § 3(a)(1))); *see also* Tex. R. Evid. 404(b) (addressing admissibility of crimes, wrongs, or other acts), 405 (addressing methods of proving character). And the trial court acted within its discretion by not holding a separate punishment hearing, and the record reflects that Araujo had the opportunity to and did present evidence relevant to punishment. *See Grammer v. State*, 294 S.W.3d 182, 192 (Tex. Crim. App. 2009) (concluding in context of adjudication proceeding, that trial court acted within its discretion when it did not hold separate punishment hearing and observing that "record clearly reflects that the trial court did not prevent appellant from presenting punishment evidence"); *Hardeman v. State*, 1 S.W.3d 689, 691 (Tex. Crim. App. 1999) (explaining that defendant must have opportunity to present evidence during adjudication proceeding but that "it is immaterial that the presentation of this evidence occurred before the actual words of adjudication").

On this record, we conclude that the trial court did not abuse its discretion when it overruled Araujo's relevancy objection and admitted the evidence about Araujo's 2019 DWI conviction. *See Henley*, 493 S.W.3d at 82–83. We overrule Araujo's first point of error.

**Fairness of Trial Court's Adjudication of Guilt**

In his second point of error, Araujo argues that "[t]he trial court's ruling was fundamentally unfair" to him because "the trial court failed to take into consideration that the violations were caused by occurrences beyond [his] control." He focuses on the evidence of his immigration and marital problems. Araujo and his probation officer testified that he was detained by immigration authorities for several months during his community supervision. Araujo argues that the "delays in [his] actions towards completing his requirement of probation was a direct result of him being detained by Immigration authorities for a period of several months." He also asserts that because of his absence from home when he was detained by immigration authorities, "his wife divorced him and he sunk in a deep depression."

As support for his position that a trial court may not revoke probation based on a violation that is caused by an occurrence beyond the individual's control, Araujo cites *Leonard*, but that case is not helpful to him. In *Leonard*, the trial court had ordered the defendant to attend, "participate fully," and successfully complete a therapy program, and the defendant was discharged from that program after he failed polygraphs that were part of the program. 385 S.W.3d at 574. The evidence showed that the defendant did attend and "participate fully" in the program, "both of which were in his power to do," but that the therapist discharged him from the program because the therapist "came to believe that he was being dishonest" based on the failed polygraphs. *Id.* at 573, 576–77. The Court of Criminal Appeals observed that "the trial

8

court, through a condition of the [defendant]'s community supervision, made the [defendant]'s compliance with the terms of his community supervision subject to the discretion of a third party." *See id.* at 577. In this context, the court explained that it "must also examine the third party's use of its discretion to ensure that it was used on a basis that was rational and connected to the purposes of community supervision." *Id.*

In contrast with the State's asserted ground for revocation in *Leonard*, even if the evidence established that Araujo was unable to complete some of the terms and conditions of his community supervision because of circumstances beyond his control, Araujo does not contend that abstaining from consuming alcohol or committing a criminal offense were actions that were beyond his control, and in his testimony, he admitted to consuming alcohol in June 2023, which was a violation of the terms and conditions of his community supervision. Further, based on the officer's testimony and the June 2023 forensic alcohol analytical report, the trial court reasonably found that Araujo had committed the criminal offense of DWI. Given this evidence, there was proof of at least one violation. Thus, we cannot conclude that the trial court abused its discretion in its revocation determination. *See Garcia*, 387 S.W.3d at 26 (explaining that proof of one violation of terms of community supervision will support revocation determination).

Araujo asserts that his due process rights were violated because the pending 2023 DWI case against him had not yet been tried. *See Leonard*, 385 S.W.3d at 577 ("Revocation involves the loss of liberty and therefore implicates due process."). Araujo argues that the trial court "in essence waived for him his right to a trial by jury and his opportunity to ensure the prosecution prove the 'new' case beyond a reasonable doubt" by holding the adjudication hearing and sentencing him to imprisonment before the new case was tried. But Araujo has not cited, and we have not found, where he raised this argument with the trial court and, thus, he has

9

not preserved it for our review. *See* Tex. R. App. P. 33.1(a) (stating required steps to preserve complaints for appellate review); *Anderson v. State*, 301 S.W.3d 276, 280 (Tex. Crim. App. 2009) (recognizing that "numerous constitutional rights, including those that implicate a defendant's due process rights, may be forfeited for purposes of appellate review unless properly preserved"). Further, even if he had raised this argument with the trial court, we cannot conclude that the trial court violated his due process rights. The applicable standard of proof was a preponderance of the evidence, and Araujo does not challenge the constitutionality of this standard or the sufficiency of the evidence under this standard to support the trial court's findings. *See Cardona*, 665 S.W.2d at 493; *see also Green v. State*, 528 S.W.2d 617, 619 (Tex. Crim. App. 1975) (rejecting argument that final conviction is required for new offense forming basis for revocation and explaining that "[t]he State alleged and sought to prove the *commission*, not the *conviction*, of the offense of aggravated robbery" (emphasis added)). As we observed above, Araujo admitted to consuming alcohol, which was a violation of the terms and conditions of his community supervision. We overrule Araujo's second point of error.

## CONCLUSION

Having overruled Araujo's points of error, we affirm the trial court's judgment adjudicating guilt.

_____

Rosa Lopez Theofanis, Justice

Before Justices Theofanis, Crump, and Ellis

Affirmed

Filed:   February 21, 2025

Do Not Publish