

# IN THE
# TENTH COURT OF APPEALS

### No. 10-12-00027-CR

**NOY MOTEN, JR.,**

**Appellant**

 **v.**

**THE STATE OF TEXAS,**

**Appellee**

**From the 54th District Court
McLennan County, Texas
Trial Court No. 2007-2082-C2**

## MEMORANDUM OPINION

In four issues, appellant Noy Moten Jr. argues that the trial court: (1) erroneously admitted extraneous-offense evidence over his Rule 403 and 404(b) objections, *see* TEX. R. EVID. 403, 404(b); (2) failed to give a limiting instruction regarding the introduction of extraneous-offense evidence; and (3) unlawfully assessed attorney's and investigator's fees as costs of court. We affirm as modified.

## I.  BACKGROUND

In this matter, appellant was charged by indictment with capital murder and aggravated assault on a peace officer.[1]  Appellant allegedly shot Waco Police Officer Craig Mrosko during the early morning hours of September 27, 2007.  The evidence at trial demonstrated that appellant was over at the house of his girlfriend, Annie Evans, on the night in question.  Evans recalled that appellant had been drinking heavily when he told her:  "I just could kill you."  Evans testified that appellant said this out of the blue and that it scared her.  Therefore, while appellant was using the restroom, Evans went to a neighbor's house to call the police.  Thereafter, the police arrived at the scene. And, upon the arrival of the police, Evans went outside.  She saw appellant leaving her house with a gun in his hand.  Evans recalled yelling "he's got a gun" while standing on the neighbor's porch.  Evans also noted that police officers told appellant that they wanted to talk to him and requested that appellant put the gun down.

Officer Mrosko testified that he heard appellant "saying something," though he could not understand what it was.  Officer Mrosko also heard another officer at the scene, former Waco Police Officer Tyrone Robinson, state that appellant had a gun in his hand.  Despite Officer Mrosko's request to put the gun down, appellant continued to walk away.  Officer Mrosko then made a second request for appellant to put the gun down. Specifically, Officer Mrosko remembered that:

> Almost immediately after me yelling for him to drop the gun the second
> time, it was as he was walking with his left shoulder toward me sideways

---

[1] The capital murder count was later dismissed by the State, presumably because Officer Craig Mrosko, the officer that was shot, survived the incident.

through the front yard. When I screamed that to him, I could see him rotate his shoulders with the object in his right hand. And as he rotated his shoulders, I could see his hand turning and at the same time a flash of light and a loud boom.

At the time appellant started firing, Officer Mrosko was "in the middle of the street still in front of the rear tire of my patrol car." However, as a result of appellant's actions, Officer Mrosko was shot in the upper leg area. Officers Robinson and Mrosko then returned fire and ultimately shot appellant. According to Officer Mrosko,

> [Appellant] stopped firing and he started to bend forward and go down on his hands and knees slowly and he was talking. I could—I remember to this day I could hear him saying, I'm dying, I'm dying, as he was bending forward and going down to the ground. And he was pretty much cussing and—
>
> . . . .
>
> The only name that I can remember or word that came out of [appellant's] mouth that really struck me was—excuse my language—fucking pigs.

Officer Mrosko later clarified that the term "pigs" is often used as a derogatory name for police officers.

Evans and Officer Robinson corroborated Officer Mrosko's testimony regarding the shooting. In particular, Evans stated that appellant started shooting first. Later, Officer Mrosko opined that appellant shot him on purpose and that appellant looked him dead in the eye, turned the gun towards him, and fired twice. Officer Mrosko also noted that he saw appellant's face prior to the shooting and described appellant as "[v]ery angry. The only thing I can describe is a look of hate, hatred, very angry." Commander Melvin Roseborough testified that, after the shooting, appellant was arrested. At this time, appellant "was alert and conscious and being [sic] belligerent

towards the officers." Though he could not remember precisely what appellant said, Commander Roseborough recalled that appellant was "cursing the officers."

The State also questioned Officer Michael Bucher, a Waco Police officer that responded to a dispatch after Officer Mrosko had been shot. Officer Bucher noted that appellant said "you mother fuckers aren't shit" while he was being handcuffed by police. Appellant was later taken to the hospital for treatment.

After the State rested, appellant chose to testify on his own behalf. Appellant admitted to have been drinking heavily on the night in question; however, he denied: (1) telling Evans that he could kill her; and (2) intentionally shooting at Officer Mrosko. Instead, appellant stated that he thought he was shooting at George Anderson Jr., a neighbor who was also dating Evans and who had allegedly gotten into an altercation with appellant previously on May 4, 2007. Through his testimony, appellant tried to establish that he acted in self-defense, asserting that he shot the gun because he feared that Anderson was trying to kill him. Later, appellant denied ever saying anything derogatory to police when he was arrested.

On cross-examination, the State attempted to question appellant about an incident that had transpired on May 4, 2007, which involved appellant, Anderson, and another individual, Robert Stewart, and resulted in a pending charge of aggravated assault with a deadly weapon.[2] The State asserted that appellant was under indictment

---

[2] In his initial testimony, appellant noted that, in May 2007, he had his first confrontation with Anderson. In particular, appellant noted that:

Really, all—all—it started in May. May of '07. It really did. And it—

for aggravated assault with a deadly weapon; that a condition of appellant's bond was that he could not possess a firearm outside of his house; and that appellant violated the conditions of his bond by purchasing a gun and using it to commit the offense in this case. The State further argued that it was entitled to question appellant about the May 4, 2007 incident and the resulting criminal charge because appellant had left a false impression with the jury regarding self-defense and his relationship with Anderson. Appellant responded by making Rule 403 and 404(b) objections and a request for a limiting instruction. *See* TEX. R. EVID. 403, 404(b). The trial court overruled appellant's objections, denied appellant's request for a limiting instruction, and allowed the State to question appellant about the aforementioned incident.[3]

Appellant subsequently admitted that he fired two shotgun slugs at Anderson and Stewart on May 4, 2007, which resulted in Stewart being shot in the buttocks. Appellant explained that he did this because he allegedly saw the outline of a gun in Stewart's pants and because Anderson and Stewart were allegedly after appellant. Appellant was arrested for this incident, though he was later released on bond. Shortly thereafter, appellant purchased a handgun from someone off the street, even though a

. . . .

> Well, after [Anderson] had threatened me and trying to get some people to—to jump on me for him, he was going to pay them to jump on me, you know. And he had done this. This had been ongoing for about two or three weeks.

Appellant also alleged that in May 2007, Anderson said he was going to "kick [appellant's] ass" and that he was going to kill appellant. Later, appellant's story expanded to include allegations that Anderson shot at him in the first part of May 2007.

[3] At the charge conference, appellant did not request that a limiting instruction with regard to the May 4, 2007 incident be included in the charge.

condition of appellant's bond prohibited him from handling a firearm outside of his home. When asked about the incident in this case, appellant stated that Anderson had fired at him before and that he believed that Officer Mrosko was Anderson.

At the conclusion of the evidence, the jury convicted appellant of aggravated assault on a peace officer and sentenced him to life imprisonment in the Institutional Division of the Texas Department of Criminal Justice. And despite an indigence finding and no evidence indicating a material change in appellant's financial situation, the trial court ordered appellant to pay $9,527.76 in court costs, which included "all court[-]appointed attorney's fees, investigator's fees, and interpreter's fees as costs in this case and Orders the defendant to pay the same." This appeal followed.

## II. EXTRANEOUS-OFFENSE EVIDENCE

In his first two issues, appellant contends that the trial court erroneously admitted extraneous-offense evidence pertaining to his prior confrontation with Anderson in May 2007. Appellant couches these complaints within the context of Texas Rules of Evidence 403 and 404(b). *See* TEX. R. EVID. 403, 404(b).

### A. Applicable Law

We review the trial court's admission of extraneous-offense evidence for an abuse of discretion. *De La Paz v. State*, 279 S.W.3d 336, 343 (Tex. Crim. App. 2009). If the trial court's ruling is within the zone of reasonable disagreement, there is no abuse of discretion. *Prible v. State*, 175 S.W.3d 724, 731 (Tex. Crim. App. 2005). A trial court's ruling on the admissibility of an extraneous offense is generally within this zone if the evidence shows that: (1) an extraneous transaction is relevant to a material, non-

propensity issue; and (2) the probative value of that evidence is not substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. *De La Paz*, 279 S.W.3d at 344.

**B.      Texas Rule of Evidence 404(b)**

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person to show action in conformity therewith. TEX. R. EVID. 404(b). But, it may be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, or knowledge. *Id.* Rebuttal of a defensive theory is one of the "other purposes" for which extraneous-offense evidence may be admitted under Rule 404(b). *Williams v. State*, 301 S.W.3d 675, 687 (Tex. Crim. App. 2009); *see Dennis v. State*, 178 S.W.3d 172, 180 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd). Furthermore, otherwise inadmissible extraneous-offense evidence may be admissible if a party "opens the door." *See Hayden v. State*, 296 S.W.3d 549, 554 (Tex. Crim. App. 2009). When a party leaves a false impression with the jury, this opens the door for the opposing party to introduce extraneous-offense evidence to correct the false impression. *See id.* (citing *Daggett v. State*, 187 S.W.3d 444, 452 (Tex. Crim. App. 2005)); *see also Hernandez v. State*, 351 S.W.3d 156, 160 (Tex. App.—Texarkana 2011, pet. ref'd).

Here, appellant argues that he did not open the door as to invite extraneous-offense evidence to correct a "false impression." We disagree. A review of appellant's testimony shows that he initially testified that Anderson had previously accosted him and that he was frightened that Anderson would kill him, especially considering that both appellant and Anderson were allegedly dating Evans. However, appellant's later

testimony shows that it was appellant who fired shots on May 4, 2007, not Anderson. Ostensibly, appellant's initial testimony left the jury with the false impression that Anderson, rather than appellant, was the aggressor in the May 4, 2007 incident. Appellant did make vague assertions that Anderson had shot at him before; however, it was appellant who was arrested for aggravated assault with a deadly weapon as a result of the shots fired on May 4, 2007.

Appellant's relationship with Anderson was central to his self-defense theory at trial. Appellant attempted to convince the jury that he reasonably feared that Anderson would kill him and that, on the night in question in this case, he fired his handgun, believing that Officer Mrosko was Anderson. Therefore, not only was appellant's testimony about the May 4, 2007 incident important to clarify the false impression left by appellant's initial testimony regarding the relationship between appellant and Anderson, it was also used to rebut the reasonableness of appellant's self-defense theory. And furthermore, the State argued that it needed to reference the May 4, 2007 incident to explain why appellant was prohibited from possessing a firearm outside of his house and, therefore, could not have reasonably used the firearm in self-defense on the night in question.

Based on the foregoing, we conclude that appellant "opened the door" by providing misleading testimony regarding his relationship with Anderson—the person he believed he shot on the night in question. *See Hayden*, 296 S.W.3d at 554; *Daggett*, 187 S.W.3d at 452; *see also Hernandez*, 351 S.W.3d at 160. We further conclude that references to the May 4, 2007 incident were relevant and necessary to: (1) clarify the false

impression left by appellant in his initial testimony regarding his relationship with Anderson; (2) rebut appellant's self-defense theory; and (3) demonstrate that appellant was prohibited from possessing a firearm outside of his house as a condition of his bond. *See Hayden*, 296 S.W.3d at 554; *Daggett*, 187 S.W.3d at 452; *Hernandez*, 351 S.W.3d at 160; *see also Williams*, 301 S.W.3d at 687; *Dennis*, 178 S.W.3d at 180.

## C.     Texas Rule of Evidence 403

Appellant also asserts that references to the May 4, 2007 incident should have been excluded under Rule 403 because the evidence was highly prejudicial and likely misled the jury into thinking that appellant has a "propensity to be aggressive and perpetrate assaults." Once again, we disagree.

Texas Rule of Evidence 403 states: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." TEX. R. EVID. 403. When a Rule 403 objection is made and then overruled, the trial court necessarily conducts a balancing test by considering and overruling the objection. *Parmer v. State*, 38 S.W.3d 661, 670 (Tex. App.—Austin 2000, pet. ref'd); *Howland v. State*, 966 S.W.2d 98, 103 (Tex. App.—Houston [1st Dist.] 1998), *aff'd*, 990 S.W.2d 274 (Tex. Crim. App. 1999) (citing *Yates v. State*, 941 S.W.2d 357, 367 (Tex. App.—Waco 1997, pet. ref'd)). In doing so, the trial court must balance (1) the inherent probative force of the proffered item of evidence along with (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest a decision on an improper basis, (4) any tendency of the

evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or repeat evidence already admitted. *Casey v. State*, 215 S.W.3d 870, 880 (Tex. Crim. App. 2007). Rule 403 favors admissibility, and "the presumption is that relevant evidence will be more probative than prejudicial." *Montgomery v. State*, 810 S.W.2d 372, 392 (Tex. Crim. App. 1990) (op. on reh'g); *see Gallo v. State*, 239 S.W.3d 757, 762 (Tex. Crim. App. 2007).

Based on our review of the evidence, we cannot conclude that the trial court abused its discretion in admitting appellant's testimony about the May 4, 2007 incident and its attendant consequences over appellant's Rule 403 objection. *See* TEX. R. EVID. 403; *see also De La Paz*, 279 S.W.3d at 343; *Prible*, 175 S.W.3d at 731. As previously noted, appellant sought to establish a self-defense theory at trial. Central to this theory was the belief that Anderson—the man appellant believed he shot on the night in question—intended to harm or kill appellant. In his testimony, appellant tried to convince the jury that he reasonably feared for his life when he shot Officer Mrosko. Testimony about the May 4, 2007 incident was highly probative in: (1) clarifying the false impression appellant left in his initial testimony regarding his relationship with Anderson; (2) undermining appellant's self-defense theory; and (3) establishing that, as a condition of his bond, appellant was prohibited from even possessing a gun outside of his home on the night of the shooting. *See Gigliobianco v. State*, 210 S.W.3d 637, 641 (Tex. Crim. App. 2006) (noting that "probative value" refers to "how strongly [the proffered evidence]

serves to make more or less probable the existence of a fact of consequence to the litigation . . . coupled with the proponent's need for that item of evidence").

Furthermore, we do not believe that appellant has adequately overcome the presumption that the testimony about the May 4, 2007 incident was more probative than prejudicial. *See Gallo*, 239 S.W.3d at 762; *Montgomery*, 810 S.W.2d at 392; *see also Casey*, 215 S.W.3d at 880 (explaining that evidence might be unfairly prejudicial if "it arouses the jury's hostility or sympathy for one side without regard to the logical probative force of the evidence"). Because we have concluded that the trial court did not abuse its discretion in admitting appellant's testimony about the May 4, 2007 incident over his Rule 403 and 404(b) objections, we overrule appellant's first and second issues. *See* TEX. R. EVID. 403, 404(b); *see also De La Paz*, 279 S.W.3d at 343; *Prible*, 175 S.W.3d at 731.

### III.    LIMITING INSTRUCTION

In his third issue, appellant contends that the trial court erred in failing to give a proper limiting instruction on the use of the extraneous-offense evidence.

### A.    Applicable Law

Texas Rule of Evidence 105(a) provides that when "evidence which is admissible . . . for one purpose but not admissible . . . for another purpose is admitted, the court, upon request, shall restrict the evidence to its proper scope and instruct the jury accordingly." TEX. R. EVID. 105(a); *see Hammock v. State*, 46 S.W.3d 889, 892 (Tex. Crim. App. 2001). "The language of Rule 105(a) requires, upon proper request, a limiting instruction to be given at the time the evidence is admitted." *Hammock*, 46

S.W.3d at 894; *see Rankin v. State*, 974 S.W.2d 707, 713 (Tex. Crim. App. 1996) (op. on orig. submission). "[A] trial court does not have discretion to postpone giving a properly[-]requested limiting instruction when that request is made at admission of the evidence." *Hammock*, 46 S.W.3d at 894; *see Rankin*, 974 S.W.2d at 711-13. However, a limiting instruction is not required when evidence can be considered on any relevant issue. *See Lane v. State*, 822 S.W.2d 35, 40 (Tex. Crim. App. 1991); *see also Cantrell v. State*, 731 S.W.2d 84, 95 (Tex. Crim. App. 1987) (concluding that no limiting instruction was required because the testimony could have been admitted for both impeachment and as direct evidence).

## B.      Discussion

After defense counsel made his Rule 403 and 404(b) objections, both he and the State questioned appellant on voir dire outside the presence of the jury. When appellant was asked about the prior incident involving Anderson and the fact that he possessed a firearm, though his bond conditions prohibited him from doing so, defense counsel once again objected and requested a limiting instruction when his objections were overruled. With regard to appellant's request for a limiting instruction, the following exchange took place:

| [Defense counsel]: | I continue in my objections to the evidence as proffered, Your Honor. |
| --- | --- |
| THE COURT: | I am going to overrule your objections, allow the State to ask the questions. |
| | Anything further from the State or defense before I bring the jury in the courtroom? |

THE STATE: Nothing from the State.

[Defense counsel]: I guess I would require a limiting instruction, Your Honor, as to the limited nature of this evidence. Because for it to come in and just blatant or just propensity of the evidence, so I guess I would like the limited nature of what the State would offer this evidence as at this point. To what limitations, I would like to know what the State, you know, what their theory of admissibility is.

THE COURT: Well, my understanding based—my understanding based on our conversations at the bench conference in my office there real quickly—

[Defense counsel]: Okay.

THE COURT: —was that it was offered to clarify impressions, false impressions that may have been left on the jury. So I don't think there is a limiting instruction for it.

[Defense counsel]: All right.

THE COURT: It doesn't just go to his credibility. And if there's—if I'm wrong about my take on the State's position, correct me now.

THE STATE: That would be correct, Judge. We're offering this as a rebuttal questioning on the—based on the Defendant's direct examination.

[Defense counsel]: And we would move for it to be limited directly to offering it to his credibility, which I believe would be the theory of admissibility at this point. We would ask the Court to instruct the jury to consider this testimony only for—if it's going to allow it, for purposes—limited purposes of judging his credibility.

| | |
|---|---|
| THE STATE: | Judge, I think that's—I'm not going to have an objection to that. We're not offering his prior crime on May 4th to show that this crime was in conformity with the same type of activity. It's more to rebut the false sense of—the false impression that was left with the jury. |
| THE COURT: | Then it's because the defense opened the door? |
| THE STATE: | That's correct. |
| THE COURT: | And I think you can clear up that. But I don't think it goes to credibility. I think it just goes to clearing up a false impression. I mean, if y'all want me to give a limiting instruction, this evidence is going to other things than credibility though. |
| THE STATE: | Absolutely, Judge. I think it goes to the Defendant's truthfulness. It goes to—actually, to rebut the defense he's given already, to rebut his state of mind that he's talked about. |
| THE COURT: | I'm not going to limit the use of the—the use of the—of the evidence. |

As we have concluded earlier, appellant's testimony regarding the May 4, 2007 incident was admissible for several reasons, not solely for undermining appellant's credibility. In fact, this testimony clarified the false impression left by appellant in his initial testimony regarding the May 4, 2007 incident and his relationship with Anderson, and the testimony served to rebut appellant's self-defense theory. In the exchange above, appellant sought to limit the testimony to determining his credibility. However, because the testimony touched on several other relevant issues at trial, we conclude that a limiting instruction was not required. *See Lane*, 822 S.W.2d at 40; *see also Cantrell*, 731 S.W.2d at 95.

Further, in undermining appellant's self-defense theory, the complained-of evidence was also admissible to prove a main fact in the case: appellant's state of mind at the time of the shooting. *See Porter v. State*, 709 S.W.2d 213, 215 (Tex. Crim. App. 1986) ("Generally, an instruction limiting a jury's consideration of certain evidence is not required when the evidence is admissible to prove a main fact in the case."); *Crow v. State*, 648 S.W.2d 17, 18 (Tex. App.—Dallas 1983, no pet.) ("Nothing indicates that the testimony was offered for impeachment. Even so, an accused cannot impeach himself as a witness. No indication exists that the testimony was offered for or limited to any particular purpose. The accused himself having proffered this testimony, under these circumstances the trial court did not err in refusing the requested charge." (internal citations omitted)); *see also Ruth v. State*, No. 13-10-00250-CR, 2011 Tex. App. LEXIS 7006, at **15-16 (Tex. App.—Corpus Christi Aug. 29, 2011, no pet.) (mem. op., not designated for publication). Therefore, based on the foregoing, we cannot conclude that the trial court erred in refusing to give a limiting instruction regarding appellant's testimony about the May 4, 2007 incident. *See Lane*, 822 S.W.2d at 40; *see also Cantrell*, 731 S.W.2d at 95. Accordingly, we overrule appellant's third issue.

## IV. ATTORNEY'S AND INVESTIGATOR'S FEES

In his fourth issue, appellant asserts that the trial court "unlawfully assessed the special prosecutor and investigative fees as costs of court."

For purposes of assessing attorney's fees, once an accused is found to be indigent, he is presumed to remain so throughout the proceedings absent proof of a material change in his circumstances. *See* TEX. CODE CRIM. PROC. ANN. art. 26.04(p)

(West Supp. 2012); *see also Mayer v. State*, No. 10-10-00302-CR, 2011 Tex. App. LEXIS 1369, at *6 (Tex. App.—Waco Feb. 23, 2011, pet. ref'd) (mem. op., not designated for publication).   Furthermore, the record must reflect some factual basis to support the determination that appellant was capable of paying all or some of his attorney's fees at the time of the judgment.   *See* TEX. CODE CRIM. PROC. ANN. art. 26.05(g) (West Supp. 2012); *Barrera v. State*, 291 S.W.3d 515, 518 (Tex. App.—Amarillo 2009, no pet.); *see also Stevenson v. State*, No. 10-09-00358-CR, 2011 Tex. App. LEXIS 8302, at *3 (Tex. App.— Waco Oct. 19, 2011, no pet.) (mem. op., not designated for publication).

Here, appellant was determined to be indigent, and the record does not indicate a material change in his financial situation.   As such, the State concedes that there is insufficient evidence in the record to support the assessment of court-appointed attorney's and investigator's fees against appellant.   In such cases, the proper remedy is to reform the judgment by deleting the attorney's and investigator's fees.   *See Mayer v. State*, 309 S.W.3d 552, 557 (Tex. Crim. App. 2010); *see also Harris v. State*, No. 10-12-00015-CR, 2012 Tex. App. LEXIS 4206, at *5 (Tex. App.—Waco May 23, 2012, no pet.) (mem. op., not designated for publication).   Contained in the Clerk's Record is a bill of cost stating that appellant was assessed $7,679.76 for court-appointed attorney's fees and $1,500 for a court-appointed investigator.   Based on the foregoing, we sustain appellant's fourth issue and modify the judgment to delete the finding that orders him to pay his court-appointed attorney's and investigator's fees.   Accordingly, the trial court's judgment should be reformed to reflect a $9,179.76 reduction in assessed court costs—a figure that represents the sum of the assessed court-appointed attorney's and

investigator's fees.  *See Mayer*, 309 S.W.3d at 557; *see also Harris*, 2012 Tex. App. LEXIS 4206, at \*5.

**V.    CONCLUSION**

We modify the trial court's judgment to delete the finding that orders appellant to pay his court-appointed attorney's and investigator's fees, and we affirm the judgment as modified.


                                        AL SCOGGINS
                                        Justice

Before Chief Justice Gray,
        Justice Davis, and
        Justice Scoggins
Affirmed as modified
Opinion delivered and filed November 15, 2012
Do not publish
[CR25]