

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-11-00377-CR

JOHN JORDY                                                    APPELLANT

V.

THE STATE OF TEXAS                                                    STATE

----------

## FROM THE 211TH DISTRICT COURT OF DENTON COUNTY

----------

## OPINION

----------

### Introduction

Appellant John Jordy appeals his conviction for felony driving while intoxicated (DWI). In a single point, he contends that the trial court abused its discretion by admitting testimony describing a correlation between the horizontal-gaze-nystagmus test (HGN) and breath-test results. The State concedes that this testimony ordinarily would have been inadmissible but argues that Appellant opened the door to it and was not harmed by it. We affirm.

Facts

**Outside the "normal realm of stupidity"**

As Christopher Parker drove his family northbound on the interstate around eleven o'clock one evening, he noticed a maroon car, at first beside and then behind him, driving erratically: aggressively speeding up, slowing down, and dangerously weaving in and out traffic. Christopher positioned his car in front so he could avoid an accident in case the other car caused one. In his rear-view mirror, he saw the car continue its pattern of aggressive driving.

Christopher was a veteran traveler of the interstate and had frequently observed erratic driving on it, but the maroon car's maneuvering seemed outside the "normal realm of stupidity." He thought the driver might be drunk. When the car approached within inches of Christopher's rear bumper, he yielded and called 911 as it passed.

Denton Police Officer Sean Aja was about twenty seconds from the interstate when he responded to the 911 report of a reckless driver. He asked the dispatcher to have the caller turn on his emergency flashers so the officer could quickly spot the suspect's car. Christopher did so and even passed the exit he normally would have taken home so he could remain on the phone with dispatch to assist the responding officer.

Officer Aja saw Christopher's flashers as soon as he entered the freeway. He passed Christopher's car, and as he gained on the maroon car in front, he activated his patrol car's digital video recorder. The maroon car, running slightly

2

over the posted speed limit, weaved within its lane a number of times and then, without signaling, left its lane to pass an eighteen-wheeler.  Officer Aja followed, activated his emergency lights, and pulled the car over.

The officer approached the passenger side and tapped on the window to get the driver's attention.  Appellant was the only one in the car.  When Appellant rolled the window down, Officer Aja smelled a very strong odor of an alcoholic beverage wafting from inside the car.

Appellant explained that he was on his way from Huntsville to Kingston, Oklahoma.  After Appellant exited the car, Officer Aja determined that the strong alcoholic odor he had smelled earlier emanated from Appellant's person.  It was the distinct odor of "metabolized alcohol," that is, alcohol that has been consumed and that a person is in the process of metabolizing.

Appellant's clothing appeared slightly disheveled, he swayed a bit, and his eyes were red and glassy.  He admitted that he had consumed four to five beers between three o'clock that afternoon and six-thirty or seven that evening.  When Officer Aja asked him to rate himself on a scale of one to ten—one: stone cold sober, ten: falling down drunk—Appellant said he was "probably a four or five." He denied, however, feeling any effects.

Officer Aja administered the HGN, and Appellant's eyes displayed six out of six possible clues of intoxication.  Because he was concerned that Appellant might lose his balance and fall into traffic, Officer Aja did not have him perform the other two standard filed sobriety tests—the one-leg stand and the walk-and-

3

turn—but, instead, had him recite a part of the alphabet (without singing) and count backward from sixty-three to thirty-three. Appellant performed these nonstandard tests with only minor hitches. But Officer Aja had already determined that Appellant had lost the normal use of his faculties, so he placed him under arrest.

The officer performed an inventory search of Appellant's car, finding an empty whiskey bottle and some unopened containers of beer. On the way to the police station, Appellant insisted that he was sober. At the station, he agreed to take a breath test. The test produced results showing alcohol concentrations of 0.112 and 0.114, both greater than the legal limit of 0.08.

### HGN Testimony

At trial, Officer Aja testified that law enforcement officers are trained to administer field sobriety tests, including the HGN, using the standardized field sobriety test manual produced by the National Highway Transportation and Safety Association ("NHTSA"). On cross-examination, Appellant's counsel asked whether the NHTSA manual stated that a certain number of clues on the HGN equates to a loss of normal use of a person's mental or physical faculties. Specifically, his line of questioning went like this:

Q. Okay. It doesn't say in the NHTSA manual that two or four or six clues on the HGN equals a loss of normal use, does it?

A. No, sir.

Q. Normal use of mental faculties or normal use of physical faculties?

4

A.     It doesn't mention either one in the manual.

Q.     Right.  Just talks about intoxication?

A.     That's correct.

Later in the trial, the State called Lewisville Police Officer Christopher Clements, who testified as an expert in DWI detection and standardized field sobriety tests, specifically, the HGN.  He agreed with Appellant's evidence, which had been elicited earlier during Officer Aja's cross-examination, that the NHTSA manual does not discuss the loss of normal use of mental or physical faculties. The prosecutor then asked him what the NHTSA manual does state regarding the HGN:  "So what does the NHTSA manual do with respect to horizontal gaze nystagmus?"  The record reflects that as Officer Clements began his answer, Appellant objected as follows:

A.     The initial validation study was based on .1 because of the—

MR.  BROOKS [for Appellant]:    Objection, Your Honor, this is qualitative—this is quantitative evidence that the HGN is not designed to produce.  I'll object to it on that basis.

The trial court's next question suggests that the legal basis for Appellant's objection may not have been immediately apparent:

THE COURT:  It's not designed to?

MR. BROOKS:  The HGN test is not designed to be quantitative.  It's not designed to give a breath test number.

THE COURT:  Okay.

5

MR. BROOKS: That what he's . . . . So I object to his testimony. It's inaccurate.

The prosecutor responded to the objection by arguing that Appellant had opened the door:

MR. CALVERT [for the State]: Briefly Judge. In cross-examination of Officer Aja, Mr. Brooks specifically asked Officer Aja, isn't it true that the NHTSA manual does not talk about normal use of mental or physical faculties. Officer Aja answered in the affirmative, yes, that's true, it does not. Mr. Brooks'[s] next question was, it only talks about intoxication. Officer Aja said, that's true. And we're going into, I think, that question, that series of questions, opened the door to what the NHTSA manual specifically says. And that's exactly where we are going, especially in light of the fact that throughout this trial the defense is raising the defense of "we can't prove necessarily that he was intoxicated at the time of driving." That's where the testimony goes to and in light of the questions asked of Officer Aja, Mr. Brooks opened the door.

The trial court overruled Appellant's objection, and Officer Clements then testified that the NHSTA manual "says that four out of six clues on the HGN test indicates a BAC of .1 or higher." It is this testimony of which Appellant complains in this appeal from his conviction.

**Discussion**

If the legal basis for Appellant's objection was not lost on the trial court, we cannot with any confidence say the same for us. We question whether the specific objection Appellant presented to the trial court articulated a valid basis upon which to exclude the officer's testimony.[1] Nevertheless, we need not

---

[1]Appellant's specific objection appeared to have been based on some deviation from the design of the HGN and inaccuracy. He first objected, "[T]his is

6

address that issue because regardless of the legal basis for Appellant's objection, we find merit in the State's contention that the trial court did not abuse its discretion by allowing the testimony because Appellant opened the door to it.

***Standard of Review***

A trial court's ruling admitting evidence will not be reversed on appeal absent a clear abuse of discretion. *Tillman v. State*, 354 S.W.3d 425, 435 (Tex. Crim. App. 2011); *Russeau v. State*, 291 S.W.3d 426, 438 (Tex. Crim. App. 2009); *Ramos v. State*, 245 S.W.3d 410, 417–18 (Tex. Crim. App. 2008); *Lozano v. State*, 359 S.W.3d 790, 817 (Tex. App.—Fort Worth 2012, pet. ref'd). The trial court does not abuse its discretion by admitting evidence unless its determination lies outside the zone of reasonable disagreement. *Lozano*, 359 S.W.3d at 817. The trial court's ruling will be upheld if it is reasonably supported by the record and is correct under any theory of law applicable to the case. *Ramos*, 245 S.W.3d at 418; *State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006).

It is generally impermissible for a witness in a DWI case to correlate a defendant's performance on the HGN test to a conclusion that his blood-alcohol concentration exceeds the legal limit. *See Emerson v. State*, 880 S.W.2d 759, 769 (Tex. Crim. App.), *cert. deinied*, 513 U.S. 931 (1994); *Lorenz v. State*, 176 S.W.3d 492, 496–97 (Tex. App.—Houston [1st Dist.] 2004, pet. ref'd); *Youens v. State*, 988 S.W.2d 404, 405–06 (Tex. App.—Houston [1st Dist.] 1999, no pet.).

---

quantitative evidence that the HGN is not designed to produce." He then added, "It's inaccurate."

7

However, evidence that would normally be inadmissible may become admissible if a party "opens the door" to it. *See, e.g., Williams v. State*, 301 S.W.3d 675, 687 (Tex. Crim. App. 2009) (assuming evidence inadmissible under rule 404(b), and holding no abuse of discretion because appellant opened the door), *cert. denied*, 130 S. Ct. 3411 (2010); *Hayden v. State*, 296 S.W.3d 549, 554 (Tex. Crim. App. 2009) (holding that even though State opened the door, trial court acted within its discretion to exclude rebuttal evidence under rule 403); *Carroll v. State*, 02-11-00265-CR, 2013 WL 2435560, at \*3 (Tex. App.—Fort Worth June 6, 2013, no pet.) (mem. op., not designated for publication).

A party opens the door to otherwise inadmissible evidence by leaving a false impression with the jury that invites the other side to respond. *Hayden*, 296 S.W.3d at 554; *Daggett v. State*, 187 S.W.3d 444, 452 (Tex. Crim. App. 2005). *See also* Tex. R. Evid. 106, 107.[2]

### It was within the trial court's discretion to find that Appellant opened the door.

One could reasonably conclude from Appellant's cross-examination of Officer Aja, which elicited evidence that the NHTSA manual showed no correlation between a certain number of clues observed on the HGN and one of

---

[2]Rule 106 of the Texas Rules of Evidence, states in pertinent part, "When a writing . . . or part thereof is introduced by a party, an adverse party may at that time introduce any other part or any other writing . . . which ought in fairness to be considered contemporaneously with it." Tex. R. Evid. 106. Rule 107 provides in pertinent part, "When part of a[ ] . . . writing . . . is given in evidence by one party, the whole on the same subject may be inquired into by the other. . . ." Tex. R. Evid. 107.

the penal code definitions of intoxication—loss of one's normal use of mental and physical faculties—but merely addresses intoxication, that the NHTSA manual says nothing at all of a correlation between intoxication and the HGN. Given that such a conclusion, albeit reasonable, is, however, false, it was within the trial court's discretion to allow the State to present evidence to clear up the erroneous impression by admitting evidence that the manual did have something to say about the other definition of intoxication—an alcohol concentration greater than 0.08—specifically, that four clues correlates to a BAC of 0.10 or higher. We hold, therefore, that the trial court's ruling admitting Officer Clements's testimony regarding the correlation between the HGN and alcohol concentration was within the zone of reasonable disagreement and should therefore be upheld. *See Williams*, 301 S.W.3d at 687; *Daggett*, 187 S.W.3d at 452. Accordingly, we overrule Appellant's sole point.

## Conclusion

Having overruled Appellant's sole point, we affirm the trial court's judgment.

ANNE GARDNER
JUSTICE

PANEL: GARDNER, MEIER, and GABRIEL, JJ.

PUBLISH

DELIVERED: October 3, 2013

9