

**NUMBER 13-13-00402-CR**

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

---

**MICHAEL OLIVER II,**                                                                 **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                                              **Appellee.**

---

**On appeal from the County Court at Law No. 2
of Bell County, Texas.**

---

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Perkes and Longoria
Memorandum Opinion by Chief Justice Valdez**

Appellant, Michael Oliver, II, appeals his conviction for the offense of committing a terroristic threat against a family member. *See* TEX. PENAL CODE ANN. § 22.07(a)(2) (West, Westlaw through 2013 3d C.S.). By one issue, Oliver contends that the trial court abused its discretion when it allowed a police officer to testify regarding an outstanding warrant out of Illinois for aggravated assault against a family member. *See* TEX. R. EVID. 404(b).

Oliver specifically argues that his trial counsel did not "open the door" to the admission of the extraneous offense evidence. We affirm.

## I.    BACKGROUND[1]

In 2013, Oliver, his wife, Carolyn Whitaker, and their four children resided with Oliver's sister, Michelle, in Michelle's home in Killeen, Texas. Michelle's friend, Alicia Simmons, Oliver's other sister, Tasha, and Tasha's newborn baby also lived in Michelle's home. On the afternoon of January 23rd, 2013, Oliver and Michelle got into an argument after Michelle informed Oliver that he might be unable to stay in the house if he could not pass a background check. Earlier that day, Child Protective Services had informed Michelle and Tasha that anyone living in the house with Tasha's newborn baby, who was in Michelle's custody, needed to pass a background check.

Later that day, Oliver and Michelle began arguing again about whether Oliver could do laundry at the house. Michelle called the police during the argument. On the recording of the call, Michelle yelled loudly that the she needed police assistance immediately. She stated that Oliver had pushed her repeatedly and had threatened to kill her if he went to jail. She began to cry and yelled, "my life is at stake." Michelle stated that Olivier did not have a weapon but that he was "deadly with his hands." She refused to tell the 9-1-1 operator Oliver's name out fear that he would retaliate if he heard his name. Oliver was arrested and indicted for committing a terroristic threat against a family and household member "with intent to place said person in fear of imminent serious bodily injury . . . ." *See* TEX. PENAL CODE ANN. § 22.07(a)(2).

---

[1] This case is before the Court on transfer from the Third Court of Appeals in Austin pursuant to a docket equalization order issued by the Supreme Court of Texas. See TEX. GOV'T CODE ANN. § 73.001 (West, Westlaw through 2013 3d C.S.).

At trial, Michelle testified that Oliver pushed her off the bed and into the wall and that he told her "he was gonna kill my bitch ass" if he got arrested. Michelle explained that she took his threat seriously because Oliver had "a background of violence." She said that she had altercations with Oliver her whole life and she always "got beat up." She added that Oliver had also, "shot their little brother." She testified, "It's his way or no way. He's going to get his way even if he got to be violent." During Michelle's testimony, the State published and played Michelle's 9-1-1 call for the jury.

Officers Reagan Rollins and Christopher Morris responded to Michelle's 9-1-1 call. Officer Rollins testified that, when she arrived at the scene, Michelle was "hysterical, crying." Officer Rollins testified that Michelle told her that Oliver had hit her and told her he was going to kill her. Officer Rollins testified that she did not see any visible injuries on Michelle. On cross-examination, Officer Rollins agreed that Michelle's statement was the only reason that the officers arrested Oliver. However, on re-direct, the State asked Officer Rollins if that was really the only basis for the arrest. Over objection, Officer Rollins responded that when she ran a background check on Oliver she discovered that he had an outstanding warrant for aggravated assault in Illinois. She explained that the outstanding warrant was another basis for the arrest.

Officer Morris testified that he spoke with Oliver at the crime scene. Officer Morris arrested Oliver and placed him in his patrol car. He testified that during the ride to jail, Oliver stated that if "anything happen[ed] to his family, anyone who was involved in this arrest, would die."

Alicia Simmons testified that she was present in Michelle's house during the argument between Oliver and Michelle. She explained that she had to go through Michelle's room to get to the bathroom. She stated that while she was in Michelle's room,

3

Oliver "kind of took [Michelle's] head and shoved her off the bed and she hit the wall." Simmons heard Oliver twice say, "Bitch, if I go to jail, I'm going to kill you." Simmons testified that Oliver was "very angry" and that his voice was "loud," and that Michelle was "very hysterical" and "very upset."

At closing arguments, defense counsel asserted that one of the keys to this case was whether the State proved that Oliver intended to place Michelle in fear of imminent bodily injury. Specifically, he stated, "I submit to you that this is a case where the State has proven most of the elements of the offense, but not the offense of, with the intent to place said person in imminent serious bodily injury." The State, in its closing, referred to all of the evidence that indicated that Oliver had threatened Michelle, including the 9-1-1 tape and testimony from Michelle and Simmons. Regarding Oliver's intent to place Michelle in imminent fear of serious bodily injury, the State directed the jury to the outstanding warrant for aggravated assault arguing that: "First of all, aggravated assault, and it's a family member. What is Michelle? Michelle is a family member and he threatens to kill her." The State argued that there was a wealth of other evidence showing that Oliver intended to place Michelle in fear of bodily injury, including the specific language of Oliver's threat, Officer Morris's testimony that Oliver threatened to kill everyone else involved in the arrest, Michelle's screaming and crying, and Michelle's testimony regarding the previous instances when Oliver beat her up and regarding Oliver's "background of violence."

At the close of evidence, the jury found Oliver guilty and assessed punishment at 270 days in prison and a $500 fine. This appeal followed.

4

## II.   STANDARD OF REVIEW & APPLICABLE LAW

An appellate court reviews a trial court's ruling on the admissibility of evidence for an abuse of discretion. *See Weatherred v. State,* 15 S.W.3d 540, 542 (Tex. Crim. App. 2000). A trial court does not abuse its discretion if its ruling is within a zone of reasonable disagreement. *See id.*

Oliver was convicted under the terroristic threat statute, which provides in relevant part: "A person commits an offense if he threatens to commit any offense involving violence to any person or property with intent to . . . place any person in fear of imminent serious bodily injury . . . ." *See* TEX. PENAL CODE ANN. § 22.07(a)(2). Texas Rule of Evidence 404(b) prohibits the admission of extraneous offenses to prove a person's character or to show that the person acted in conformity with that character. TEX. R. EVID. 404(b). However, such evidence may be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. *Id.*

In addition, when a party "opens the door," evidence that is otherwise inadmissible may become admissible, allowing opposing counsel to present evidence to correct the mistaken impression. *Hayden v. State*, 296 S.W.3d 549, 554 (Tex. Crim. App. 2009). A party opens the door by leaving a false impression with the jury that invites the other side to respond. *Id.* A party who opened a door to an issue cannot complain when the opposing party desired to go into the details of that subject. *Id.* For example, in *Jordy v. State*, the Fort Worth Court of Appeals held that a trial court did not err by finding that the State could admit otherwise inadmissible evidence that there was a correlation between failing a field sobriety test and intoxication. 413 S.W.3d 227, 231 (Tex. App.—Fort Worth 2013, no pet.). Defense counsel initially elicited testimony from a police officer that there

5

was no correlation between the test and intoxication, and the appellate court found that because the impression left by these answers was "false, it was within the trial court's discretion to allow the State to present evidence to clear up the erroneous impression . . . ." *Id.*

## III.    DISCUSSION

### A.  Admissibility under Rule 404(b)

Oliver argues that the trial court abused its discretion by admitting extraneous offense evidence of an outstanding warrant from another state—claiming that his cross examination of Officer Rollins did not open the door to the evidence.  During cross examination, defense counsel questioned Officer Rollins about her reason to arrest Oliver as follows:

> Q:    And, the decision to arrest him for terroristic threat was based, solely, upon Michelle Oliver's statement to you.
>
> A:    Yes.

The State requested a hearing outside the presence of the jury and sought to offer evidence that Officer Rollins took other factors into consideration to make the arrest.  At the hearing, the State questioned Officer Rollins:

> Q:    Were there other things that made you—that would have been associated with this terroristic threat that would have alerted you to arrest this person?
>
> A:    Yes.
>
> Q:    And, what was that?
>
> A:    The fact that he had aggravated assault warrants out of another state.

At the hearing, defense counsel made the following objection:

6

[Defense counsel]: Your Honor, I would say that clearly violated the motion in limine. I think the question that was asked of this witness was, is it based upon—solely based upon what Michelle Oliver said. He was arrested for terroristic threat. There was no weapon found. He didn't take any action while the law was there. And I believe the motion in limine would be violated as to any prior actions. Certainly, I think the officer can testify . . . .

[The Court]: All right, Mr Kalafut [State], tell me how you think [defense counsel] opened the door on that.

[Prosecutor]: He opened the door—in fact, he said—okay. He said you arrested Mr. Oliver based solely on the testimony or the statement made by the witness in this case, Michelle Oliver. The terroristic threat has to do with I'm going to kill you. They found out he had warrants out of Illinois for aggravated assault. I'm going to kill you aggravated assault out of a different state that would give them cause to—these would be thing that would look at to see that this shows intent on his—to get a reaction out of the victim.

The trial court ruled that the evidence was admissible. The jury returned to the courtroom and, the State continued questioning Officer Rollins:

Q: I think the question was brought up regarding why you arrested— why there was an arrest on Mr. Oliver, and you—what was the—they asked you what the sole reason was. Was there a sole reason?

A: No.

Q: What was the reason why you arrested Mr. Oliver for terroristic threat on family member?

A: The reason we arrested him was the way she was acting, her statement, the fact that we talked to other family members who believed that he was capable of killing her. And, he also had an aggravated assault warrant out Illinois that was on a family member.

Here, as the prosecutor explained in his response to the objection, the State elicited testimony about the arrest warrant to correct the mistaken impression created by defense counsel's question and Officer Rollins' reply to that question. Defense Counsel's final question to Officer Rollins was, "And, the decision to arrest him for terroristic threat

7

was based, solely, upon Michelle Oliver's statement to you?" Officer Rollins' affirmative reply left a mistaken impression with the jury because there were other factors, including the arrest warrant from Illinois, that contributed to this decision.[2] The State, therefore, was entitled to elicit testimony explaining that the arrest was not based solely on Michelle's accusations. *See Hayden*, 296 S.W.3d at 554; *Jordy*, 413 S.W.3d at 231.

As explained by the prosecutor's response to the objection, defense counsel bolstered its theory that the State could not prove that Oliver intended to place Michelle in fear of imminent bodily injury by eliciting testimony that the police arrested Oliver solely based on Michelle's accusations. The State was entitled to introduce evidence of the outstanding warrant for aggravated assault of a family member to correct the mistaken impression left by Officer Rollins' original response. *See Hayden*, 296 S.W.3d at 554; *Jordy*, 413 S.W.3d at 231. Therefore, the trial court did not abuse its discretion by ruling that Oliver's trial counsel opened the door to Officer Rollins' testimony about the outstanding warrant.

### B. Admissibility under Rule 403(b)

Oliver argues that even if his trial attorney opened the door to the testimony, it was inadmissible under Rule 403(b) because the prejudicial nature of the outstanding arrest warrant outweighed its probative value. *See* TEX. R. EVID. 403(b). However, Oliver only objected to the testimony on the basis that it "goes into prior actions." Oliver's attorney did not reference unfair prejudice or Rule 403 in the objection at trial. *See Montgomery v. State*, 810 S.W.2d 372, 388 (Tex. Crim. App. 1990) (op. on reh'g) (en banc); *Beasley*

---

[2] The State admitted two videos in which officers Rollins and Morris, sitting in their police vehicle outside the house, discuss their decision to arrest Oliver. Exhibit 2a, which was admitted for record purposes but not published, contains a discussion of the outstanding arrest warrant from Illinois. That discussion was redacted from Exhibit 2b, which was published and played for the jury. The existence of the Exhibit 2a indicates that the defense counsel was aware, or should have been aware, that the arrest warrant contributed to the officer's decision to arrest Oliver.

*v. State*, 838 S.W.2d 695, 701-02 (Tex. App.—Dallas 1992, pet. ref'd) ("Once the trial court rules that the evidence has relevance apart from character conformity, the court has ruled on the full extent of the opponent's extraneous offense objection. . . . It is incumbent upon the opponent of the evidence to then object that the evidence, although relevant, should not be admitted because its probative value is substantially outweighed by the danger of unfair prejudice.").

While, in his objection, Oliver's attorney did mention the motion in limine filed prior to trial, the motion in limine did not refer to the danger of unfair prejudice or rule 403(b); moreover, a motion in limine does not preserve error for our review. *Webb v. State*, 760 S.W.2d 263, 275 (Tex. Crim. App. 1988) (en banc) (holding that obtaining a ruling on a motion in limine is not sufficient to preserve error for review, but rather there must be a proper contemporaneous objection to the proffered evidence). Because Oliver did not make a proper Rule 403 objection to this testimony at trial, he has waived this argument on appeal. *See* TEX. R. APP. P. 33.1. *Montgomery*, 810 S.W.2d at 388; *Beasley*, 838 S.W.2d at 701–02.

### C. Harm

Finally, even if the admission of this testimony was erroneous, we find that such error would not be reversible. Under Rule 44.2(b) of the Texas Rules of Appellate Procedure, error that does not affect an Oliver's substantial rights must be disregarded. TEX. R. APP. P. 44.2(b). A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict. *Scales v. State*, 380 S.W.3d 780, 786 (Tex. Crim. App. 2012). Here, the jury heard the 9-1-1 tapes in which Michelle was yelling hysterically and crying, stating that Oliver was threatening to kill her, that she needed police at the house immediately, and that her life was at stake. Michelle

also testified at trial that Oliver threatened to kill her. She explained that she believed him because he had previously committed numerous violent acts and that when they argued, she always got "beat up." Another resident of the house testified that she witnessed Oliver physically push Michelle and threaten to kill her. And Officer Morris testified that, on the drive to the police station, Oliver threatened to kill anyone involved in his arrest. While the State did reference outstanding warrant at closing arguments, given the substantial amount of other evidence that Oliver threatened to kill Michelle with intent to place her in fear of imminent serious bodily injury, we find that the admission of the testimony in question, even if erroneous, did not affect Oliver's substantial rights. See TEX. R. APP. P. 44.2(b); *Scales*, 380 S.W.3d at 786.

We overrule Oliver's sole point of error.

## IV. CONCLUSION

We affirm the trial court's judgment.

/s/ **Rogelio Valdez**
Rogelio Valdez
Chief Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
2nd day of September, 2014.

10