

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-15-00229-CR

JAKE BRADLEY MCLEMORE                                         APPELLANT

V.

THE STATE OF TEXAS                                                  STATE

----------

## FROM THE 90TH DISTRICT COURT OF YOUNG COUNTY
## TRIAL COURT NO. 10259

----------

## MEMORANDUM OPINION[1]

----------

Appellant Jake Bradley McLemore appeals his conviction for continuous sexual abuse of a young child, his daughter.[2]  In six issues, he contends that the trial court committed harmful errors by admitting certain evidence and that the

---

[1]*See* Tex. R. App. P. 47.4.

[2]*See* Tex. Penal Code Ann. § 21.02(b) (West Supp. 2016).

cumulative effect of these errors cast "a shadow upon the integrity of the verdict."

We affirm.

## Background Facts

According to her testimony at trial, when Brittany[3] was in the fourth grade, appellant touched her sexual organ, and she touched his penis with her hands and her mouth. Appellant also showed Brittany pornographic videos on his phone and took pictures of her with his phone while she was naked. Appellant told Brittany that these acts were a secret and that he would "make it worse" for her if she told anyone about them.

Brittany eventually told her friends about the sexual abuse, and her friends told a school counselor. The counselor conveyed the allegations to Shelly Tinney, an investigator with the Texas Department of Family and Protective Services. Tinney met with Brittany, and Brittany told Tinney about appellant's sexual abuse. Tinney arranged for Brittany to have a forensic interview about the allegations the next day. Later, Tinney spoke with appellant, who denied engaging in sexual acts with Brittany. Tinney also notified Richard Ferguson, a police officer in Graham, about Brittany's allegations.

Brittany discussed the allegations of sexual abuse with Shannon May, a forensic interviewer, on two occasions. She also participated in a forensic

---

[3]To protect the complainant's identity, we use a pseudonym. *See McClendon v. State*, 643 S.W.2d 936, 936 n.1 (Tex. Crim. App. [Panel Op.] 1982). Brittany was twelve years old and was in the fifth grade when she testified.

2

interview with Kayla Vorhees about a year after her interviews with May. During her first interview with May, Brittany contradicted herself concerning whether she had been sexually abused by appellant. She appeared to be nervous, said that her family was angry with her, and repeatedly said that she wanted to "fix this." She concluded the first interview by stating that she wished she had not told anyone about the abuse.[4] In Brittany's second interview with May, which occurred in the same month as the first interview, she resolutely stated that appellant had abused her and described details of the abuse. During her interview with Vorhees, Brittany recanted her allegation of appellant's sexual abuse.

Officer Ferguson watched Brittany's first interview with May through a live feed but did not participate in it. He also interviewed appellant. During that interview, appellant denied abusing Brittany, stated that he had not been alone with her, and claimed that Brittany had reasons to manufacture allegations against him. Pursuant to a search warrant, the police seized many of appellant's electronic devices. On his cell phone, the police found evidence related to accessing and viewing child pornography and related to sexual acts between parents and their children.

---

[4]Concerning the first interview, May testified, "I think [Brittany] was trying to recant, but because there [were] so many details that came out, she couldn't actually do that. . . . [S]he couldn't consistently recant."

3

A grand jury indicted appellant for continuous sexual abuse of a young child. The indictment alleged that from October 2012 through May 2013, he had committed six sexual crimes against Brittany. The parties filed several pretrial documents, including the State's notice of its intent to introduce Brittany's outcry statements to Tinney and to May and appellant's election for the jury to assess his punishment in the event of his conviction.

At trial, appellant pled not guilty. Brittany testified and described appellant's sexual abuse, including how they touched each other, how he photographed her while she was naked, and how he showed her pornographic videos. She testified that she had asked appellant to stop the sexual acts but that he had told her that the acts were normal and that he would "go find other girls" if she did not comply. She also testified that after initially disclosing appellant's sexual abuse, she later recanted and lied to "save [him]."

The jury watched recordings of Brittany's three forensic interviews. The jury also heard testimony from, among other witnesses, Tinney, May, and police officers connected to the investigation. One officer testified that he gave credence to Brittany's allegation of sexual abuse because "a child of that age shouldn't have the knowledge . . . of the particular sex acts that she described on several different occasions" and because the evidence discovered on appellant's cell phone corresponded to what Brittany said she had watched on it.

After the parties concluded their presentation of evidence and arguments, the jury found appellant guilty of continuous sexual abuse of a young child. The

4

jury then heard more evidence and arguments concerning his punishment and assessed thirty years' confinement. The trial court sentenced him in accordance with the jury's verdicts. He unsuccessfully sought a new trial, and he brought this appeal.

## Admission of Interview Recordings

In appellant's first issue, he contends that the trial court abused its discretion by admitting video recordings of the three forensic interviews that Brittany participated in. We review a trial court's decision on the admissibility of evidence under an abuse of discretion standard. *Johnson v. State*, No. PD-1496-14, 2016 WL 3017842, at *10 (Tex. Crim. App. May 25, 2016). A trial court abuses its discretion when its decision falls outside the zone of reasonable disagreement. *Id.* If the trial court's evidentiary ruling is correct under any applicable theory of law, it will not be disturbed even if the trial court gave a wrong or insufficient reason for the ruling. *Id.*; *see Sewell v. State*, 629 S.W.2d 42, 45 (Tex. Crim. App. [Panel Op.] 1982) ("We must . . . determine whether the evidence was admissible for any reason.").

In appellant's cross-examination of Officer Ferguson, he asked about the forensic interviews and stated that during those interviews, Brittany had "said it was one way, [then had] said it was another way." Later, appellant cross-examined May about the contents of the interviews and claimed during that questioning that Brittany's story had wavered.

During May's testimony in front of the jury, the State offered the recordings of Brittany's two interviews with her, contending that appellant had opened the door to their admission by questioning Officer Ferguson and May about the interviews' contents. The State contended that the recordings contained the "best evidence of what was said during the interviews." The trial court deferred its ruling on the admissibility of the recordings to give the parties an opportunity to brief the issue.

The next morning, outside the jury's presence, the State repeated its contention that appellant had opened the door to the recordings' admission through his counsel's cross-examination of several witnesses and that the rule of optional completeness—rule of evidence 107—justified their admission. *See* Tex. R. Evid. 107 (stating that if a party introduces part of an act, declaration, conversation, writing, or recorded statement, "an adverse party may inquire into any other part on the same subject" and may "introduce any other act, declaration, conversation, writing, or recorded statement that is necessary to explain or allow the trier of fact to fully understand the part offered by the opponent"). Specifically, the State contended that appellant had "impeached every single witnesses . . . based upon the forensic interview[s]" and that the "best way forward . . . [was] to . . . offer those videos and let the jury decide for [itself] what was said." Appellant argued that the recordings were inadmissible

6

under the code of criminal procedure,[5] that the rule of optional completeness did not justify their admission, and that their admission would violate his constitutional rights of confrontation and cross-examination.

The trial court ruled that the recordings were admissible, explaining,

> I think there [were] specific questions by the defense concerning the forensic interview and the statements appear to be inconsistent statements of the victim during the trial. And also I think you did raise that with the -- even with the detective on the stand, or the sergeant on the stand. Based on what I'm reading in case law, I'm going to overrule those objections and I'm going to allow the videos.

After the trial court made this ruling but before the recordings were played for the jury, appellant asked the court to admit a third recording, which depicted Brittany's forensic interview with Vorhees. His counsel said, "If you're going to play two of them, I want to play the third one." The State responded by stating, "That's fine, Your Honor." With respect to the interplay between the admission of the first two recordings and the third recording, appellant's counsel stated, "So I'm having to ask for this to be played when I think it should be played *regardless of the other two. I want to make sure the record is clear about that, that I would have been asking for this third video anyway.*"[6] [Emphasis added.]

---

[5]In the trial court, appellant contended that the recordings were not admissible under either articles 38.071 or 38.072 of the code of criminal procedure. *See* Tex. Code Crim. Proc. Ann. arts. 38.071–.072 (West Supp. 2016). Appellant does not analyze the application of those articles in his argument on appeal; rather, he focuses on whether rule 107 justified the recordings' admission.

[6]Thus, the record contradicts appellant's contentions on appeal that he objected to the admission of all three recordings and that he requested

7

After appellant voiced his unconditional request for the trial court to admit the third recording, he again urged his objections to the first two recordings, and the trial court again overruled the objections. When the State offered the first two recordings as evidence in front of the jury, appellant rested on his previous objections. Later, when the State asked the trial court to admit the third recording during Vorhees's testimony, appellant's counsel stated, "Oh, we don't have any objection to this one at all."

On appeal, appellant argues that rule 107 did not justify the admission of the three recordings. The State contends, in part, that appellant cannot complain on appeal about the admission of the third recording because he sought its admission and that the admission of the third recording alone is "sufficient to open the door for the other two [recordings]." We agree with the State.

To the extent that appellant argues that the trial court abused its discretion by admitting the recording of Brittany's interview with Vorhees, we reject that assertion because appellant explicitly and unconditionally asked for the admission of the recording and did not object when the State offered it. He therefore failed to preserve error as to the admission of that recording. *See* Tex. R. App. P. 33.1(a) (requiring preservation of error); *Lozano v. State*, 359 S.W.3d 790, 823 (Tex. App.—Fort Worth 2012, pet. ref'd) ("The failure to object in a

---

admission of the third recording only in response to the trial court's ruling on the first two recordings.

timely manner during trial forfeits complaints about the admissibility of evidence.").

Furthermore, under rule of evidence 106, when a party "introduces all or part of a writing or recorded statement, an adverse party may introduce" any other "recorded statement . . . that in fairness ought to be considered at the same time."[7] Tex. R. Evid. 106; *see Jordy v. State*, 413 S.W.3d 227, 231 & n.2 (Tex. App.—Fort Worth 2013, no pet.). Like rule 107, rule 106 is designed to guard against the possibility of confusion, distortion, or false impression that could arise from the use of an act, writing, conversation, declaration, or transaction out of proper context. *Elmore v. State*, 116 S.W.3d 801, 807 (Tex. App.—Fort Worth 2003, pets. ref'd).

Brittany's interview with Vorhees occurred in May 2014, approximately one year after she first disclosed appellant's sexual abuse and after she participated in the two interviews with May. During the interview, Brittany recanted her allegations against appellant and said that she had lied. She stated, "I made a big mistake . . . saying what I did." She indicated that no part of what she had said about appellant's abuse was true. Concerning the interview, Vorhees

---

[7]We recognize that the State formally introduced the recording of Brittany's interview with Vorhees, in which Brittany recanted her allegations against appellant. But the record indicates that the State did so in compliance with appellant's initial and unconditional request for the recording's admission even though the State did not believe that the recording was "necessarily . . . admissible."

9

testified that Brittany's statements indicated her belief that that "she was the one [who had] made a mistake . . . [and had] ruined her family."

Given these facts, we conclude that the recordings of Brittany's interviews with May were admissible to provide the jury with context to assess the credibility and reliability of her recantation with Vorhees. *See* Tex. R. Evid. 106. In other words, we conclude that even if the recordings with May would have been otherwise inadmissible under the code of criminal procedure or otherwise, they became admissible because fairness required the jury to have the ability to consider Brittany's demeanor, tone, and statements given in the recantation with Vorhees in light of her demeanor, tone, and statements given in her interviews with May. *See* Tex. R. Evid. 106, 107; *Elmore*, 116 S.W.3d at 807. We hold that the trial court did not abuse its discretion by admitting the two recordings of Brittany's interviews with May. *See Johnson*, 2016 WL 3017842, at *10. Because we conclude that appellant cannot show error from the trial court's admission of the three recordings of Brittany's forensic interviews, we overrule his first issue.

### Cell Phone Evidence

In his second issue, appellant contends that the trial court abused its discretion by admitting evidence found on his cell phone. He argues that the State did not properly authenticate the evidence.

Officer Ferguson testified that the police recovered a cell phone during a warrant-based search of appellant's home. He testified that the phone matched

a phone that Brittany described.  When the State sought admission of the phone itself as an exhibit, appellant objected on the ground of chain of custody, but the trial court overruled that objection and admitted the phone.  Later, Brittany identified the phone that the trial court had admitted as being appellant's phone.

Outside of the presence of the jury, the State sought admission of data found on the phone.  The data included sexually-explicit photographs, web links, and a history of internet sites accessed on the phone; the history showed that someone had executed searches related to incest, "[p]reteen Lolitas," and other related topics.  Appellant objected to the admission of the data on the grounds that it was "highly prejudicial" and that the State could not authenticate it.  With respect to authentication, appellant contended that because the State could not prove when the data on the phone had been first accessed, it was not admissible.  He argued,

> [F]or any kind of authentication in any trial, anything you've proven up, you must have some sort of idea when or where it was done. . . . Since there's no way to put forth that date, those pictures cannot be properly authenticated to the defendant.  And I just want to make sure that all that is very clear in my objection.

Later, in front of the jury, Chris Ledbetter, a special agent with the Department of Public Safety, testified that when he began examining the phone, he discovered that it could be unlocked only through facial recognition.  Ledbetter testified that when he held up appellant's driver's license photograph to the phone, the phone unlocked.  Ledbetter testified that his examination of the phone revealed that it had been used to search the internet for topics such as "[p]reteen

11

pics," [p]reteen Lolita," and "[h]omemade incest videos." He also explained that the phone contained the following descriptions of internet links that had been accessed on it: "[i]ncest daughter," [i]ncest love lesson," and "[a]ccidental incest." Finally, Ledbetter testified that the phone contained pictures of preteen females.

On appeal, appellant contends that the data from the phone was inadmissible because the State could not provide evidence "showing when the searches [were] performed or who performed [them]." He contends,

> Due to the extremely portable nature of cell phone[s] and the relative ease in which they can be accessed by someone other than their owner, this Court should adopt a standard by which contents of a cell phone must be authenticated in a way that definitely shows who accessed the certain website and who performed the internet search.

The rule of authentication requires a proponent of evidence to show that an item is what the proponent claims it is. Tex. R. Evid. 901(a); *Jones v. State*, 466 S.W.3d 252, 261 (Tex. App.—Houston [1st Dist.] 2015, pet. ref'd), *cert. denied*, 84 U.S.L.W. 3702 (U.S. June 27, 2016). Authenticity of evidence is a preliminary admissibility question for the trial court. *Tienda v. State*, 358 S.W.3d 633, 638 (Tex. Crim. App. 2012) (explaining, however, that the "ultimate question whether an item of evidence is what its proponent claims then becomes a question for the fact-finder—the jury, in a jury trial"). We review the trial court's conclusion regarding preliminary admissibility based on authenticity under an abuse-of-discretion standard. *Id.* "Evidence may be authenticated in a number

12

of ways, including by direct testimony from a witness with personal knowledge, by comparison with other authenticated evidence, or by circumstantial evidence." *Id.*

Here, before appellant lodged his objection on authentication as quoted above, the trial court heard the following facts. Officer Ferguson testified that the police found an LG cell phone with a blue case and that the phone matched Brittany's description of the phone on which appellant had showed her pornography. Brittany testified that appellant showed her pornographic videos on his phone and used it to take pornographic pictures of her. Ledbetter testified outside of the jury's presence that he used appellant's driver's license photo to unlock the phone because it had facial recognition security features. He also testified that someone "who had that phone viewed" the data found on it, including the websites and the photographs, although he could not say when the data was viewed or who viewed it.

From these facts, the trial court could have reasonably concluded that the phone in question belonged to appellant, that data found on it would likely generally correspond with his use of it and his control over it because of the phone's facial recognition security measures, and that the specific data at issue likely corresponded with his use of the phone because the data was similar to what Brittany stated appellant showed her. In other words, based on this circumstantial evidence, the trial court could have reasonably made the preliminary finding that the phone's data was linked to appellant's use of the

13

phone, as the State claimed it was. *See* Tex. R. Evid. 901; *Jones*, 466 S.W.3d at 262.

We cannot conclude, as appellant contends, that the evidence must "definitely" show who accessed the data on the phone because the "proponent of the proffered evidence need not eliminate all other possibilities inconsistent with authenticity." *Jones*, 466 S.W.3d at 263; *see Manuel v. State*, 357 S.W.3d 66, 74 (Tex. App.—Tyler 2011, pet. ref'd). The possibilities that someone accessed the data before appellant owned the phone or while he owned it but was not in possession of it are alternate scenarios that the jury was entitled to assess upon the admission of the evidence. *See Tienda*, 358 S.W.3d at 646; *see also Wise v. State*, 364 S.W.3d 900, 905–07 (Tex. Crim. App. 2012) (upholding a conviction for possession of child pornography based on deleted images found in the free space of a computer even though it was impossible to know when the images were accessed and it was possible that the photographs had been placed there by a virus or by the computer's prior owner).

Applying the deferential abuse of discretion standard—*see Tienda*, 358 S.W.3d at 638—we conclude that the trial court did not err by overruling appellant's objection concerning authentication and by admitting the evidence found on his cell phone. We overrule his second issue.

### "Threat" Evidence

In his third issue, appellant contends that the trial court abused its discretion by denying his motion for mistrial when the State solicited testimony

concerning threats made by appellant to Brittany because the trial court had already made a "clear ruling" that evidence of the threats was inadmissible. More specifically, appellant argues that the trial court made a pretrial ruling that threats by appellant were not to be discussed by the outcry witnesses—May and Tinney—but that the State intentionally elicited testimony concerning the threats from both witnesses. He also contends that the State did not give proper notice before trial that it would introduce evidence concerning the threats.

Appellant does not, at any point within the argument on this issue, state where in the record the trial court made a pretrial ruling concerning the threats. In the Statement of Facts portion of his brief, appellant cites to a particular page of the reporter's record while stating that the "trial court made clear there would be no outcry testimony regarding [appellant's] alleged threats . . . ." On that referenced page, the trial court stated that it would "reserve" its ruling concerning one specific threat until it "hear[d] some testimony" about it; the court stated that it would make its decision "depending on what comes up." At that time, appellant did not obtain a specific ruling on any objection to testimony concerning threats or obtain a running objection to such testimony. Later in that same pretrial hearing, the trial court indicated that it would "allow" testimony about appellant's statement that if Brittany told anyone about the abuse, "he would do something worse."

Later, Tinney testified in front of the jury, without any contemporaneous objection, that appellant had told Brittany that "if she ever told anyone he would

15

make it worse for her."  She also testified without a contemporaneous objection, "[Brittany] said [appellant] said he was going to do it harder than that if she told anyone."  Then, May testified, without a contemporaneous objection, that "[appellant] said he would do more if [Brittany]" told anyone about the abuse.  Finally, Brittany testified, without any objection, that appellant said he "would make it worse for [her]" if she told anyone about the abuse.

To the extent that appellant eventually made objections to May's and Tinney's testimony about appellant's threats, we conclude that those objections are forfeited for two reasons.  First, the objections were not made contemporaneously with the testimony and were therefore untimely.  *See* Tex. R. App. P. 33.1(a)(1); *Lackey v. State*, 364 S.W.3d 837, 843 (Tex. Crim. App. 2012) (stating that an objection must be made as soon as the grounds become apparent); *Trapp v. State*, Nos. 02-09-00382-CR, 02-09-00383-CR, 2010 WL 3834595, at *1 (Tex. App.—Fort Worth Sept. 30, 2010, pet. ref'd) (mem. op., not designated for publication) (concluding that an objection was forfeited because it was made after the witness answered the question); *see also Ward v. State*, 522 S.W.2d 228, 230 (Tex. Crim. App. 1975) ("The prosecutor was permitted to ask two questions after the hearsay was elicited; it was at this point that the appellant objected.  Nothing is preserved for review.").  Second, Brittany testified about the threats without objection.  *See Geuder v. State*, 115 S.W.3d 11, 13 (Tex. Crim. App. 2003) (stating that the defendant must generally object "each time inadmissible evidence is offered"); *Hall v. State*, No. 02-09-00213-CR, 2010 WL

16

4570035, at *2 (Tex. App.—Fort Worth Nov. 4, 2010, no pet.) (mem. op., not designated for publication) ("Because Hall failed to object each time the extraneous offense was offered, he failed to preserve his complaint and has thus forfeited this argument on appeal."); *see also Leday v. State*, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998) ("Our rule . . . is that overruling an objection to evidence will not result in reversal when other such evidence was received without objection, either before or after the complained-of ruling."). Because we conclude that appellant forfeited his objection to evidence concerning his threats to Brittany, we overrule his third issue.

**Evidence Concerning Psychosexual Assessment**

In his fourth issue, appellant contends that the trial court abused its discretion by not granting a motion for mistrial when "the State solicited testimony regarding [a]ppellant's refusal to take a [p]sychosexual [a]ssessment." During its case in chief, the State called Nora Nevarez, an employee of the Department of Family and Protective Services, to testify about issues affecting Brittany after she made the outcry of appellant's sexual abuse. During Nevarez's testimony, in a manner that was wholly unresponsive to a question that the State asked her, she stated that appellant had been "recommended to do a psychosexual assessment." The following exchange then occurred:

> [DEFENSE COUNSEL]: Number one, that's improper. Number one, that's a ridiculous test. It's the dumbest thing I've ever heard of and I did --
>
> [THE STATE]: We'll move on.

17

[DEFENSE COUNSEL]: -- tell him not to take it.

[THE STATE]: We'll move on.

THE COURT: All right.

The State proceeded to ask Nevarez many questions unrelated to the psychosexual assessment. Later, outside of the presence of the jury, appellant complained that the State had elicited testimony about the psychosexual assessment, asked the court to declare a mistrial, and stated that for optional completeness, he wanted to present evidence that appellant offered to take a polygraph test. The trial court denied appellant's motion for mistrial and denied appellant's request to present evidence that he had offered before trial to take a polygraph.[8]

A motion for mistrial must be timely, and it is timely "only if it is made as soon as the grounds for it become apparent." *Griggs v. State*, 213 S.W.3d 923, 927 (Tex. Crim. App.), *cert. denied*, 552 U.S. 864 (2007); *Sanchez v. State*, 418 S.W.3d 302, 306 (Tex. App.—Fort Worth 2013, pet. ref'd). Here, although appellant interrupted Nevarez's testimony and complained about her disclosure concerning his recommendation of a psychosexual assessment, he did not at that time make a specific objection, obtain a ruling, or seek a mistrial, so he did not immediately preserve error. *See* Tex. R. App. P. 33.1(a)(1)(A), (2)(A); *Brewer v. State*, 367 S.W.3d 251, 253 (Tex. Crim. App. 2012). Instead, he

---

[8]Appellant does not complain on appeal about the trial court's decision excluding evidence about his offer to take a polygraph.

waited until a later point in Nevarez's testimony to request a mistrial. We conclude that he did not make the motion as soon as the grounds for it became apparent, and we therefore hold that he did not preserve this issue for our review. *See Brewer*, 367 S.W.3d at 253; *Griggs*, 213 S.W.3d at 927; *Wilkerson v. State*, 881 S.W.2d 321, 326 (Tex. Crim. App.), *cert. denied*, 513 U.S. 1060 (1994); *Veras v. State*, 410 S.W.3d 354, 358 (Tex. App.—Houston [14th Dist.] 2013, no pet.); *Weems v. State*, 328 S.W.3d 172, 179 (Tex. App.—Eastland 2010, no pet.). We overrule appellant's fourth issue.

**Overlapping Outcry Testimony**

In his fifth issue, appellant contends that the trial court abused its discretion by allowing Tinney and May to provide overlapping outcry-witness testimony. Before the parties presented their opening statements at trial, the trial court held a hearing on the admissibility of testimony by Tinney and May, to whom Brittany had made outcries of sexual abuse. Tinney and May testified at the hearing. Tinney explained that she had talked with Brittany at Brittany's school about her allegations of sexual abuse against appellant. Tinney also explained that before she spoke with Brittany, Brittany had discussed the allegations of sexual abuse with friends at school, those friends had approached a school counselor about the allegations, and the school counselor had asked Brittany to confirm what her friends had disclosed.

May testified that during her first forensic interview with Brittany, Brittany disclosed only what she had previously said to Tinney. According to May, during

19

Brittany's second interview, she was more forthcoming, and she discussed aspects of sexual abuse that she had not disclosed to Tinney.

Appellant objected at the pretrial hearing to Tinney's and May's testimony on the basis that they were not the first adult to whom Brittany had made an outcry about the abuse and that their testimony was therefore inadmissible as hearsay and was not covered by the exception to hearsay created by article 38.072 of the code of criminal procedure. *See* Tex. Code Crim. Proc. Ann. art. 38.072. The State contended that Tinney and May were the proper outcry witnesses because they were the first adults to whom Brittany described her abuse with specific details. The State also argued that both Tinney and May could testify as outcry witnesses because Brittany provided different details about the abuse to them. The trial court ruled that it would allow Tinney and May to each testify as outcry witnesses but that May would be able to testify only about acts that were distinct from what Brittany described to Tinney. Appellant later sought a mistrial on the basis that Tinney's and May's testimony should have been excluded, and the trial court denied that motion.

In his appellate argument on this issue, appellant does not contend that the trial court erred by admitting Tinney's and May's testimony on the ground that they were not the first adult to whom Brittany made an outcry. Nor does appellant argue that the trial court erred by allowing testimony from two outcry witnesses generally. Instead, he contends that the trial court erred because it "improperly allowed [Tinney] and [May] to testify to the same outcry events."

20

Specifically, he contends that Tinney and May each testified that Brittany had disclosed that appellant showed her pornographic videos and that appellant required Brittany to place his sexual organ in her mouth.

Assuming, without deciding, that appellant preserved his argument in this issue for our review and that the trial court erred by admitting overlapping testimony, we must conclude that such an error was not harmful.[9] We generally review error in admitting evidence under the standard for nonconstitutional harm. *See* Tex. R. App. P. 44.2(b); *Taylor v. State*, 268 S.W.3d 571, 592 (Tex. Crim. App. 2008). Nonconstitutional error is harmful and reversible only when it affects a defendant's substantial rights. *See* Tex. R. App. P. 44.2(b). A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict. *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997). Conversely, an error does not affect a substantial right if we have "fair assurance that the error did not influence the jury, or had but a slight effect." *Solomon v. State*, 49 S.W.3d 356, 365 (Tex. Crim. App. 2001); *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998). In making this determination, we review the record as a whole, including any testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, and the character of the alleged error and how it might be considered in

---

[9]In the discussion of this issue, appellant does not provide a harm analysis.

21

connection with other evidence in the case. *Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002).

Texas courts have repeatedly held that testimony about a child's statements concerning a sexual crime is harmless when other, unobjected-to evidence proves the same facts. *See Land v. State*, 291 S.W.3d 23, 28–31 (Tex. App.—Texarkana 2009, pet. ref'd) (holding that the admission of a recording of a child's interview given at an advocacy center was erroneous but harmless because the recording was cumulative of the victim's properly admitted live testimony); *Jensen v. State*, 66 S.W.3d 528, 535 (Tex. App.—Houston [14th Dist.] 2002, pet. ref'd) (op. on reh'g) (holding that the admission of videotaped testimony was harmless because the child's "live testimony did not differ substantially from the facts revealed in the videotape"); *see also Burks v. State*, 876 S.W.2d 877, 898 (Tex. Crim. App. 1994) ("Because the testimony at trial of Macias and Diaz proved the same facts that the State sought to admit through the testimony of Price, we conclude that Price's erroneously admitted hearsay testimony did not harm appellant."), *cert. denied*, 513 U.S. 1114 (1995).

Here, appellant admits that the testimony of Tinney and May overlapped; that is, he concedes that their testimony was cumulative. Moreover, Brittany testified about the same facts discussed above. We find it unlikely that the jury was inclined to reject Brittany's story of sexual abuse, as related in person by her and through the testimony of one outcry witness, but changed to a decision of accepting the story based simply on hearing two aspects of it again through a

22

second outcry witness. *See Todd v. State*, Nos. 02-12-00114-CR, 02-12-00115-CR, 2013 WL 1457735, at *5 (Tex. App.—Fort Worth Apr. 11, 2013, pet. ref'd) (mem. op., not designated for publication); *see also Shaw v. State*, 122 S.W.3d 358, 364 (Tex. App.—Texarkana 2003, no pet.) ("Because the State sufficiently proved the fact to which the hearsay relates by other competent and unobjected-to evidence[,] . . . we hold the admission of the hearsay constituted nonreversible error."); *Duncan v. State*, 95 S.W.3d 669, 672 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd) (holding that the improper admission of outcry testimony was harmless when similar testimony was admitted through the victim). We hold that the record does not establish harmful error arising from any overlap in May's and Tinney's testimony, and we therefore overrule appellant's fifth issue.

## Alleged Cumulative Error

Finally, in his sixth issue, appellant contends that the "number of errors committed by the trial court amounts to cumulative error that casts a shadow upon the integrity of the verdict." Based on our analysis above, we cannot conclude that the trial court committed a "number of errors." Thus, we overrule appellant's sixth issue complaining of cumulative error. *See Estes v. State*, 487 S.W.3d 737, 762 (Tex. App.—Fort Worth 2016, pets. filed); *Meza v. State*, No. 02-14-00277-CR, 2015 WL 5770748, at *3 (Tex. App.—Fort Worth Oct. 1, 2015, pet. ref'd) (mem. op., not designated for publication).

## Conclusion

Having overruled all of appellant's issues, we affirm the trial court's judgment.

/s/ Terrie Livingston

TERRIE LIVINGSTON
CHIEF JUSTICE

PANEL:  LIVINGSTON, C.J.; DAUPHINOT and GARDNER, JJ.

DAUPHINOT, J., dissents and concurs without opinion.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  August 18, 2016